Wachstetter v. The State.

No. 11,687.

## WACHSTETTER v. THE STATE.

CRIMINAL LAW.—*Practice.*—*Sufficiency of Evidence.*—*Supreme Court.*—In criminal as in civil causes, where the evidence in the record tends to sustain the verdict on every material point, the Supreme Court will not reverse the judgment merely on the evidence.

SAME.—*Refusal of Instructions.*—*Error.*—There is no available error in the court's refusal to give an instruction, when the record shows that the substance and law of such instruction had been given the jury in the court's own instructions, nor where the instruction refused gave undue prominence to an isolated question in the cause, upon which the defendant's guilt or innocence of the offence charged did not necessarily depend.

SAME.—*Cross-Examination of Witness.*—*Discretion of Court.*—*Abuse of.*—*Supreme Court.*—How far the cross-examination of an adverse witness may be extended, in any case, is a question largely in the discretion of the trial court; and, unless the record shows an absolute abuse of such discretion, its exercise will not be reviewed by the Supreme Court.

SAME.—*Impeachment of Witness.*—*General Moral Character.*—*Cross-Examination.*—Under section 1803, R. S. 1881, in the impeachment of a witness, the subject-matter of the inquiry, whether upon the examination in chief or the cross-examination, is his general moral character; and where an impeaching witness has testified in chief that, as to one of the elements of moral character, the reputation of the party sought to be impeached is good, it is within the discretion of the trial court to allow such witness to be cross-examined in regard to the party's reputation as to any other or all of the essential and constituent elements of good moral character.

From the Criminal Court of Marion County.

*R. B. Duncan, J. S. Duncan, C. W. Smith, J. R. Wilson, J. W. Gordon, L. O. Bailey, J. M. Cropsey* and *C. M. Cooper,* for appellant.

*F. T. Hord,* Attorney General, *W. T. Brown,* Prosecuting Attorney, and *C. F. Robbins,* for the State.

HOWK, J.—On the 15th day of August, 1883, an indictment was duly returned into the court below in this case, which charged, in substance, that the appellant, Gottlieb Wachstetter, and one Hogan McCarthy and William McCarthy, on the 6th day of July, 1883, at and in the county

of Marion, and State of Indiana, did then and there, unlawfully and feloniously, steal, take and carry away a large amount of personal property, specifically describing each item thereof, consisting chiefly of legal tender treasury notes, silver certificates, and national bank notes, of different denominations and values, and a number of pieces of silver coin of American coinage, of different sizes and values, etc., of the moneys, personal goods and chattels of James Q. W. Wilhite, contrary to the form of the statute, etc.

Upon the appellant's arraignment and plea of not guilty, the issues as to him were separately tried by a jury, who returned into court the following verdict: " We, the jury, find the defendant guilty as charged in the indictment, and that he be fined in the sum of six hundred dollars, and be imprisoned in the State prison for a period of five years, and be disfranchised and rendered incapable of holding any office of trust or profit for a term of five years.

    -   (Signed)     " LOUIS B. WILLSEY, Foreman."

Over the appellant's motions for a *venire de novo* and for a new trial, the court rendered judgment against him upon and in accordance with the verdict.

In this court, errors are assigned by the appellant, as follows:

1. The overruling of his motion for a *venire de novo;*

2. The overruling of his motion for a new trial; and,

3. The error of the trial court, as alleged, " in allowing the State's attorney to cross-examine the affiants, whose affidavits were filed by the defendant below, in support of his motion for a new trial, before he was allowed to examine them."

The first question presented by the appellant's counsel, in argument, is the alleged insufficiency of the verdict. Counsel claim that " the verdict of the jury is contrary to evidence, and to law—contrary to law, because contrary to evidence." The only objection, pointed out by counsel to the verdict, is in reference to the amount of the fine assessed therein against the appellant. In section 1933, R. S. 1881, which defines the offence of grand larceny and prescribes its punishment,

it is provided that whoever is guilty of grand larceny, as there defined, " upon conviction thereof, shall be * * * fined not exceeding double the value of the goods stolen," etc. The fine assessed against the appellant in the verdict of the jury, in the case at bar, as we have seen, was $600. Appellant's counsel insist, with much earnestness and apparent confidence, that the jury were not authorized by the evidence appearing in the record, under the law, to assess the fine in this case at $600. In other words, counsel claim as we understand them, that there is no evidence in the record which authorized the jury to find that the value of the goods stolen by the appellant, and described in the indictment, amounted to the sum of $300.

The prosecuting witness, Wilhite, testified on the trial that when he went into the appellant's place of business, on Illinois street, in the city of Indianapolis, where the alleged larceny was committed, he had " between forty and sixty dollars " in money, in a little money-purse in his hip-pocket, on the left-hand side. He could not describe his money with much accuracy, but he knew he had one twenty-dollar bill and a ten-dollar bill. He did not know just how many five-dollar bills he had, but he thought at least two, if not three, five-dollar bills. He also had some silver change in his purse, but he could not recollect the amount of such change, or the number or size of the different pieces. This purse and its contents, together with the other personal goods described in the indictment, were stolen from the person of Wilhite, as the evidence tended to prove, while he was stupefied from the effects of a drink taken in the appellant's saloon, in an upper room of the saloon building. It is conceded by the appellant's counsel that the value of the goods stolen, exclusive of the money, was shown by the evidence to be $250. It is claimed by counsel, however, that the jury were not authorized by the evidence appearing in the record to find the value of the money stolen to be more than $22; that this sum, added to the value of the other goods stolen, makes the total

value of all the stolen goods to be $272; and that, therefore, the highest fine which the jury could lawfully assess against the appellant was a fine of $544, instead of the fine actually assessed of $600.

Appellant's counsel assume, as the basis of their calculation, that the evidence shows the amount of money in Wilhite's purse to have been $42, and no more. They then claim that the jury were precluded by the evidence from taking into consideration the twenty-dollar bill in determining the amount of the fine, because the witness could not recollect what kind of a bill it was. He knew it was not a silver certificate, but that it was good money. The jury were justified by the evidence, we think, in finding that the note was either a legal tender treasury note or a national bank note, and it was not material which of the two the jury found it to be, as the indictment charged the larceny of a twenty-dollar bill of each kind. Besides, the question as to the value of the stolen goods was a question peculiarly within the province of the jury, as, indeed, are all other questions, whether of law or fact, in a criminal cause; for, under the 19th section of the bill of rights in our State Constitution, the jury are the ultimate judges of the law as well as of the facts in all criminal cases. *Keiser* v. *State*, 83 Ind. 234; *Fowler* v. *State*, 85 Ind. 538; *Nuzum* v. *State*, 88 Ind. 599.

It is manifest from the verdict of the jury in the case in hand, that they must have found the value of the stolen goods to be at least $300. We can not say that there is no evidence in the record which sustains this finding as to the value of the stolen goods, and, therefore, we can not hold that the fine assessed against the appellant in the verdict of the jury is an illegal fine under the evidence, or under the law applicable to the evidence; on the contrary, we are of opinion that the verdict of the jury upon the point under consideration is sustained by the evidence, and, therefore, in strict accordance with law.

The next alleged error of which the appellant complains is

the refusal of the court to give the jury the seventh instruction requested by him. This instruction reads as follows:

"If, taking all the evidence in the case tending to show whether the prosecuting witness, James Q. W. Wilhite, or some other person occupied the lounge, in the front room of the defendant's business place, up-stairs, at the time of the alleged larceny, and if, considering that evidence all together with all the evidence in the case, you shall have a reasonable doubt of defendant's guilt, you must acquit him."

There is no available error in the refusal of the court to give the jury this instruction, for the reason, if no other, that the substance and law of the instruction had been given the jury in much clearer and less confused language in the court's own instructions. *Harvey* v. *State*, 40 Ind. 516 ; *Graham* v. *Nowlin*, 54 Ind. 389. Besides, the instruction gave undue prominence to an isolated question in the case, upon which the appellant's guilt or innocence of the offence charged did not necessarily depend, and was properly refused on that ground. *Goodwin* v. *State*, 96 Ind. 550, 568.

The last error complained of by appellant's counsel is the action of the trial court in permitting the State's attorney to propound certain questions, upon cross-examination, to two of the appellant's witnesses, Thomas Stapp and Frank Wilson. One William Lee had testified on behalf of the appellant, and the State had introduced evidence tending to impeach Lee, by showing that his general moral character was bad. Stapp and Wilson were then called as witnesses by the appellant for the purpose of sustaining his witness Lee, by proving that Lee's reputation for truth and veracity was good. On cross-examination of Stapp, the State's attorney propounded to him, of and concerning Lee, the following questions:

"1. Did you hear of him being arrested in Hamilton county, Ohio, for grand larceny, and giving the name of William Smith? Ans. No.

"2. Do you know of his being in the station-house that week, in connection with a man here? Ans. No."

Wachstetter *v.* The State.

To the witness Wilson the State also propounded, upon cross-examination, of and concerning Lee, the following questions:

1. "I will ask you, if you remember hearing his truth and veracity discussed in connection with a circumstance like this: In 1877 or 1878, do you remember of hearing it said, generally said, that he was connected with a number of men here who were knocking men down on the street, and a man was knocked down from Connersville, and the man arrested in Lee's cellar, with a lot of property, and Lee was arrested, and his story in regard to the transaction caused his reputation to be talked of among the policemen and people generally?"

2. "You never heard a discussion of the charges of robbery against him, and the story he told about them, and, in that connection, a discussion of his reputation for truthfulness?"

Negative answers were returned by the witness Wilson to each of these questions.

Of the questions propounded to the witness Stapp, appellant's counsel say: "The State had no right, upon cross-examination, to ask the witness what he had heard as to Lee's honesty, or whether he had heard of his having been arrested for larceny in Hamilton county, Ohio, or of his having been in the station-house." It is claimed that the State's questions to Stapp were improper, and that the court's ruling thereon was error, because "the only inquiry made by defendant was as to Lee's reputation for truth and veracity. No other particular trait of character was inquired into."

In *Ledford* v. *Ledford*, 95 Ind. 283, this court said: "A very wide latitude is necessarily allowable in the cross-examination of an adverse witness, and just how far it may be extended, in any particular case, is a question largely in the discretion of the trial judge." Of course, it is not meant by this, that it will not be error, in any case where the trial court may allow a party, upon cross-examination, to propound questions, clearly and palpably illegal and incompe-

tent, to an adverse witness.    But it was meant that, in every case, the error must be shown to be of such a wrongful and injurious nature and tendency, as to amount to an abuse of the court's discretion.    In the case in hand, the argument of appellant's counsel, against the competency of the State's questions to the witness, Stapp, is based upon the assumption that the evidence in chief of the witness, that "Mr. Lee's general reputation for truth and veracity among his associates is good," did not open the door to a cross-examination by the State in regard to Lee's reputation for integrity or honesty.    In other words, counsel imply, if they do not assert, that there is no proper or legal connection between a man's reputation for truth and veracity and his reputation for integrity or honesty; that, while he may have the reputation of being a thief and a highwayman, his reputation for truth and veracity may still be good.

We are not inclined to adopt this view of the question under consideration.    Truth or veracity is a trait of the man of integrity or honesty; it is never a trait of the thief or robber.    The reputation for dishonesty or criminal conduct is, we think, utterly inconsistent with a good reputation for truth and veracity.    We mean, of course, such dishonesty or criminal conduct as was imputed to Lee in the questions propounded by the State to Stapp and Wilson, and complained of by the appellant.    When Stapp and Wilson had testified that the reputation of Lee for truth and veracity was good, it was competent for the State to show, upon cross-examination, that Lee had been reputedly under arrest, or in the station-house, on a charge of felony.    If the witness, Stapp, had answered the questions propounded to him by saying that he had heard of Lee's arrest for grand larceny, and of his giving the name of William Smith, and of his being in the station-house, such evidence would have been as inconsistent and as completely at variance with his evidence in chief, as it would have been if he had testified, on cross-examination, that he had heard that Lee's general reputation for truth and veracity

was not good. If Stapp had answered the questions put to him by the State in the affirmative, his testimony would not, of course, have proved that Lee was guilty of the larceny mentioned therein; but such answers would have strongly tended to show that Stapp's evidence in chief was unworthy of belief.

In *McDonel* v. *State*, 90 Ind. 320, it was held by this court that where a witness testifies in chief that the reputation of a party is good with respect to some quality or disposition, it is competent to show, on cross-examination, that he has heard reports at variance with the reputation he has given the party. Truth is so nearly allied to honesty or moral soundness, it seems to us, that where a witness has testified in chief that the reputation of a party for truth and veracity is good, it is. competent to ask him, on cross-examination, if he has not heard of a certain matter, which would seriously affect the reputation of the party for honesty and moral soundness, as being necessarily inconsistent and at variance with the reputation he had given the party. According to the best lexicographers of our language, at least, in this country, the words " truth," " veracity " and " honesty " are almost synonyms. each of the other, very nearly the same definitions being given to each of such words. We are of the opinion, therefore, that the questions propounded by the State to the witnesses, Stapp and Wilson, were germane to the subject-matter of their evidence in chief, to such an extent that they were clearly competent on cross-examination.

In *Oliver* v. *Pate*, 43 Ind. 132, in discussing a similar question to the one we have been considering, this court said : " It is difficult, if not impossible, to lay down specific rules to control or limit the cross-examination of witnesses. The judge before whom the case is tried must, to a considerable extent, determine it, and in doing so, must be governed by the circumstances attending the examination." Accordingly, in that case, the trial court having sustained objections to cross-examining questions somewhat similar to those pro-

pounded to Stapp and Wilson, and there being "no statement
in the bill of exceptions showing the circumstances under
which the proof was offered," it was held by this court that,
in sustaining the objections to such questions, there was no
error shown by the record. This is all that was decided upon
the question now under consideration in the case last cited,
and, although it is cited and relied upon by appellant's coun-
sel in support of their position in the case in hand, yet we are
of opinion that there is no substantial conflict between the
decision in that case and what we here decide.

Our criminal code provides, in section 1803, R. S. 1881,
that "In all questions affecting the credibility of a witness,
his general moral character may be given in evidence." In-
tegrity or honesty, and truth or veracity, are all essential and
constituent elements of good moral character. In the im-
peachment of a witness, the subject-matter of the inquiry,
whether upon the examination in chief or the cross-examina-
tion, is his moral character. It would seem to follow, there-
fore, that where an impeaching witness has testified in chief,
that, as to one of the elements of moral character, the repu-
tation of the party sought to be impeached is good, it would
be competent to cross-examine the witness in regard to the
reputation of such party as to any other or all of the essen-
tial and constituent elements of good moral character.

We find no error in the record of this cause which author-
izes or requires the reversal of the judgment.

The judgment is affirmed, with costs.

ZOLLARS, C. J., thinks that too much latitude was allowed
on the cross-examination of the witness Thomas Stapp.

Filed Nov. 25, 1884.

### ON PETITION FOR A REHEARING.

ELLIOTT, J.—Two general propositions are discussed in
the brief on the petition for a rehearing. These propositions,
stated in a condensed form, are:

*First.* The State having failed to prove that a twenty-dol-

Wachstetter v. The State.

lar note taken from Wilhite was a national bank note or a treasury note, as alleged in the indictment, the jury committed a fatal error in taking that note into account in assessing the fine against the appellant.

*Second.* Conceding that it was proper to include the twenty-dollar note in the estimate, still, the value of the property taken did not exceed $292, and, therefore, the jury erred in assessing the fine at $600.

These propositions rest on assumptions of fact, and if these assumptions are erroneous, the foundation of the argument is sapped and the whole fabric must fall.

The evidence as to the twenty-dollar note was, in short, this: it was a note or bill, it was money, good money, and it was not a silver certificate. This, we are satisfied, authorized the presumption that it was either a national bank bill or a treasury note. This we say, because it is a matter of general knowledge that there are only three kinds of notes now circulating and recognized as good money, namely, silver certificates, treasury notes and national bank bills. It is not reasonable to presume that courts or juries can be ignorant of a fact so well and widely known, and it is an axiomatic principle that facts of which judicial notice is taken need not be proved.

The evidence upon the other proposition shows that the witness valued the articles taken at $294; but he described the articles and added some facts increasing the value of some of them, and we can not say that the jury did wrong in estimating the articles at the value they did.

Counsel have not again discussed any of the other propositions decided, and we shall not again discuss them.

Petition overruled.

Filed Feb. 20, 1885.