# THE STATE v. COOK.

1. **Criminal Law:** RAPE: CORROBORATION OF PROSECUTRIX: EVIDENCE ON APPEAL. Although the evidence contained in the abstract in this case tends very slightly, if at all, to corroborate the prosecutrix in a trial for rape, yet, as the abstract does not purport to contain all the evidence, this court cannot say that she was not corroborated.

2. ——: ——: EVIDENCE OF CONSENT: DECLARATION OF PROSECUTRIX. If the prosecutrix in this case, on the same day when the alleged rape was committed, stated to another woman, who had seen her and the defendant in questionable relations only a few minutes before the commission of the alleged rape, "that she had had sexual intercourse with the defendant, and would have it again, and did not care what other people might say," *held* that such statement should have been allowed to go to the jury as bearing on the question of her consent.

*Appeal from Winneshiek District Court.*

THURSDAY, MARCH 19.

THE defendant was convicted of the crime of rape, and sentenced to imprisonment in the penitentiary for fifteen years. He appeals.

*M. J. Carter* and *C. P. Brown*, for appellant.

*Smith McPherson, Attorney-general*, for the State.

ADAMS, J.—I. The prosecuting witness, Emily Barnum, testified that the defendant had sexual intercourse with her against her will, on the third day of January, 1884. The defendant insists that there is no evidence tending to connect him with the offense charged, except the testimony of the prosecutrix. It may be conceded that the evidence set out in the abstract tends to corroborate the prosecutrix but very slightly if at all; but the abstract does not purport to be an abstract of all the evidence, and we cannot assume that it is.

1. CRIMINAL law: rape: corroboration of prosecutrix: evidence on appeal.

II. The evidence shows that on the third day of January,

2. —: —: evidence of consent: declaration of prosecutrix.

1884, the prosecutrix and the defendant were living in the same house as members of the same family; that immediately after dinner they were left alone in the house; that while thus alone the defendant sat down in the prosecutrix's lap, and commenced to take improper liberties with her; that soon afterwards they went into a bed-room, where the defendant took still greater liberties. Whether he had sexual intercourse with her at that time is not clearly shown. The prosecutrix testified at one time that he did. But the state does not claim that he did, and the prosecutrix, in another part of the testimony, showed that he did not effect penetration. The bed-room, it appears, adjoins the kitchen. While the prosecutrix and the defendant were on the bed in the bed-room, a neighbor by the name of Fox, who resided about twenty-five paces therefrom, came into the kitchen, and as he came in he stamped his feet. The defendant arose and went into the kitchen, and the prosecutrix soon followed him. She then went to a bed-room in the chamber. Fox soon left, and the defendant followed the prosecutrix to the chamber. Fox testified that he thinks that just as she left she slapped the defendant. She did not make any revelation as to what had transpired in the bed-room below, nor attempt to leave the house, nor call for help. She withdrew to a more retired part of the house, and to a room which contained a bed. She spread some quilts on the bed, and according to her testimony, the defendant had sexual intercourse with her on the bed. Whether the intercourse was with her consent was an important question for the jury to determine. The burden was on the state to show that it was without her consent, and she testified to that effect.

As bearing upon the question of consent in the chamber, the defendant was allowed to introduce the testimony of a person who was a spectator of the scene in the bed-room below. One Ella Browning, a neighbor, called as inopportunely as Fox did, and about the same time. She went into a different room, however, which the witness designated as

the front room. It was separated from the bed-room by only a pasteboard partition, and the partition, it appears, had become torn. Through the hole she could look upon the bed. What she saw she described in these words: "I saw through the hole Emily Barnum and the defendant on the bed. She was lying on her back and the defendant was on her. Her legs hung over the bed, half way, and were spread apart. * * * I did not notice any scuffling when they were on the bed. I did not see any drawers on Miss Barnum. Her arm was over him just below the shoulder." She also testifies: "I saw them get up. The defendant went into the kitchen first. She got up and shook down her dress, and stirred up the quilts on the bed and went into the kitchen." The defendant's counsel then asked her a question in these words: "State whether or not on January 3, 1884, you heard Emily Barnum say that she had had sexual intercourse with the defendant and would have it again, and did not care what other people might say." To this question the state objected, and the objection was sustained. In our opinion the question should have been allowed. We do not say that proof of her consent to prior intercourse with the defendant would necessarily show that the intercourse at the time of the alleged offense was with her consent, nor do we say that her statement that she had consented to intercourse could be shown strictly as an admission. The testimony as to her statement, we think, was admissible upon other ground. It is certain that if she made the statement attributed to her, she is not a woman of chaste language and feelings, whether the statement is true or not. Such statement, too, if made, tended to show that her feelings towards the defendant had become of a very amatory character. The making of the statement was a circumstance entitled to go to the jury as evidence of much the same character as the evidence tending to show that she consented to intercourse in the bed-room below, a few minutes prior to the alleged ravishment.

We think that the judgment must be reversed, and the case remanded for another trial.

REVERSED.