## THE STATE v. WARD.

1. **Criminal Evidence:** RAPE: GOOD CHARACTER OF DEFENDANT. In a prosecution for rape, a witness for defendant was asked, "Are you acquainted with his (defendant's) reputation as a peaceable, law-abiding citizen?" *Held* that the ruling of the court excluding the question might well be sustained on the ground that it did not inquire concerning the reputation of the defendant in the neighborhood in which he lived at and before the commission of the alleged crime.

2. ————: ————: REPUTATION FOR CHASTITY OF PROSECUTRIX. In such case, where the defendant claimed that the sexual intercourse was with the consent of the prosecutrix, *held* that an inquiry by the defense into her reputation for chastity should be confined to the time prior to the alleged rape.

3. ————: WITNESSES NOT NAMED IN INDICTMENT: WAIVER. The state called two witnesses whose names were not indorsed on the indictment, and of whose testimony no notice had been given, (compare § 3, ch. 68, Laws of 1878.) When the first of them was called to the stand the defendant objected, and the witness was excused by the court. The defendant's counsel then said: "I desire to withdraw the objection, * * * but waive no rights." Thereupon both witnesses were examined without further objection, but not cross-examined. *Held* that defendant waived the requirements of the statute, and could not, on appeal, claim that the state had no right to examine these witnesses.

4. **Rape:** RESISTANCE: CONSENT: INSTRUCTION. In a prosecution for rape the court instructed: "The allegation of force is proved by any competent evidence showing that either the person of the woman was violated, and her resistance overcome by physical force, or that her will was overcome by duress or fear. In either case, the crime is complete, although she ceased all resistance before the act was finally consummated. But before the defendant can be convicted of rape, it must be shown that (the woman) did not consent to intercourse, but that she used all the resistance in her power, under the circumstances, up to the time of the intercourse." *Held* that the whole scope of this instruction was to the effect that, in order to convict, the jury must find that she did not *at any time* consent to the intercourse, and that it was without error.

*Appeal from Woodbury District Court*—HON. C. H. LEWIS, Judge.

SATURDAY, DECEMBER 17.

THE defendant was indicted, tried and convicted of the crime

of rape, alleged to have been committed upon the person of one Mrs. McGlashen, and he appeals.

*Murphy & Brost*, for appellants.

*A. J. Baker, Attorney-general*, for the State.

ROTHROCK, J.—I.   The complainant is a married woman, and the mother of three small children; the youngest of which, at the time the alleged crime was committed, was about nine months old.   They resided with her husband at a country place in Woodbury county, where the husband was engaged in operating a saw-mill.   The defendant is an unmarried man, and at present goes by the name of Fred Ward.   He had been living in Woodbury county some two or three years, and for eight months before the alleged crime was committed he had been working in the neighborhood of McGlashen's saw-mill.   Up to the time when he went into that neighborhood his name was Redman.   It does not appear for what purpose he changed his name, and it is probably not a material inquiry in the case.   On Sunday afternoon, August 25, 1885, the complaining witness was at home with two of her children.   Her husband was away at a neighbor's house with the oldest child.   The defendant came to the house on horseback, tied his horse, and went into the house and had sexual intercourse with the complainant.   It is claimed on the part of the state that the defendant assaulted the woman, and that she resisted him, and that the intercourse was effected by force, and against her will.   The defendant claimed, and so testified on the trial, that the act was done with the consent of the woman, and for a consideration in money paid to her.   Two witnesses testified that they met the defendant as he was going away from the house, and some distance therefrom, and that defendant told them that he had been to McGlashen's and had sexual intercourse with Mrs. McGlashen.   He did not describe the means used to effect it.

The complaining witness, among other things, testified as

follows: "I was afraid of him, but I didn't dare to run, on account of my children. Well, he took right hold of me, and of course I did all I could to get away from him, and I got out to the front door at once. I almost got away from him, and he grabbed my dress, and caught hold of my arm, and I did get away from him, and almost out of the front door. He caught me by one of my arms. Well, I don't just remember, but anyhow he just lifted me, and threw me right onto the floor, and threw his weight onto me. I made all the struggle that laid in my power. I lugged his weight and mine all over the floor as long as I had any strength. I hollered, and he put his hand over my mouth, so I couldn't holler; and then I tried to hiss the dog, and I hissed the dog twice, and he said, if I did that again, he would kill me. He had both my hands in one of his. I have told you all I did in reference to resisting him. I did all in my power. He threatened to kill me a number of times. Just once he raised his hand to strike me. He accomplished his purpose; he had sexual intercourse with me at that time. I should judge it is about a hundred yards to my nearest neighbor's, Mr. Beal's. I thought they were not at home. It was about as far again to my next nearest neighbor. After he accomplished his purpose, he told me, if I ever told, he would kill me; and then he left. He did not stay there any length of time. I did not see him when he went away. When he went away I hadn't got up yet off the floor. He hurt my arm, and one of my limbs. My dress was torn. There was bruises on my arm and one of my limbs. He held my hands clasped by one of his; he held me by this process, and hurt me, and I never will be as strong as I was before. When down on the floor he had his knees right on me for a time. When he was on me I crawled on the floor, or dragged on the floor, and dragged his weight. At this time my little baby was in the cradle, and my little girl was there, but when I got up I found her down to the mill-dam, to a shanty we had down there. The child was scared almost to death. She wouldn't

hardly come to me. I found her hid in a corner. Just as soon as I could get up, and get my baby, and hunted up my other child, I went away. I went to Mr. Crawford's. I did not go to my nearest neighbor, for the reason I thought they were n't at home; the doors were all shut."

It has appeared to us to be proper to set out this testimony, for the reason that complaint is made that the defendant was denied the right to fully cross-examine the witness. The witness was cross-examined at great length. The evident purpose of the examination was to show that she consented to the intercourse. There was not one word of her cross-examination inconsistent with her testimony as above set out. Objection was made by the state to certain questions in the cross-examination, and complaint is made because the objections were sustained. There is no merit in the objections. The questions were either repetitions of others previously answered, or they were clearly improper. We will give two or three of these questions as examples of others. One was as follows: " You may state any specific act the defendant did in effecting an entrance to your person;" another: " what, if any thing, did the defendant use to effect an entrance to your person?" It is perfectly manifest that these and other kindred questions were improper, in view of the particularity with which the witness had again and again described the alleged assault upon her. We need not further allude to these objections. It appears to us that the defendant was allowed the fullest latitude in the cross-examination of the witness.

II. The defendant introduced in his defense a witness who testified that he lived in Floyd township, Woodbury county, and that he was acquainted with defendant, and had known him about three years. He was then asked the question: "Are you acquainted with his [defendant's] reputation as a peaceable, law-abiding citizen?" The question was objected to by the state as being incompetent and immaterial, in the manner in

1. CRIMINAL evidence: rape: good character of defendant.

which it was asked. The abstract recites that the " objection was sustained, with leave to call for the fact as to whether he knows his general character in the respect named." The defendant insists that this was erroneous. And it is argued that the witness should have been allowed to give the general reputation of the accused, as distinguished from his character as a fact. The ruling of the court can well be sustained upon the ground that the question was not full and explicit, by reason of the omission to include therein the reputation in the neighborhood in which defendant lived at and before the commission of the alleged crime. The objection that the defendant was not permitted to show his good character is not well taken, because the witness was allowed to give proper evidence on that question. He was fully examined as to the defendant's character, and the answers show that the word " character " was used by the witness as synonymous with reputation.

III. The defendant introduced one Kellog as a witness, who testified that he had heard of Mrs. McGlashen, the prosecuting witness, and that he had known her for the last two or three years. He was then asked the question: " Are you acquainted with the general reputation of the prosecuting witness, Mrs. McGlashen, in that community for chastity?" The question was objected to upon the grounds, among others, that it was incompetent and immaterial. The objection was sustained. This was clearly correct, if for no other reason, because the inquiry was not limited to the reputation of the prosecuting witness up to the time and before the alleged crime was committed. This was an important consideration, inasmuch as the defense was not a denial of sexual intercourse, but was founded on the alleged fact that the intercourse was with the consent of the prosecuting witness. The defendant ought not to be allowed to show a bad reputation without expressly disconnecting therewith any animadversions there may have

2. ——:——: reputation for chastity of prosecutrix.

been against her growing out of his own act of sexual intercourse.

IV. The state called two witnesses whose names were not indorsed on the indictment, and no notice was given of their testimony. When the first of these witnesses was called to the stand, the defendant objected to the witness upon the grounds above stated. The witness was excused. Thereupon counsel for the defendant said: " I desire to withdraw the objection I made to Mrs. Pettes' testimony, but waive no rights." The witness was recalled by the state and examined, to which the defendant made no objection. His counsel did not cross-examine either of these witnesses. It is claimed that the state had no right to examine these witnesses; but the defendant, by withdrawing his objection to the examination of one of the witnesses, and by failing to make objection to the examination of the other, must be held to have consented thereto. It is true, he consented without waiving his legal rights. Under section 3, chap. 168, Acts 17th General Assembly, he might have objected, and the court was evidently ready to exclude the witnesses. There can be no doubt that the defendant could, by his consent, waive the requirements of the statute, just as he may waive objection to incompetent evidence.

*3. ———: witnesses not named in indictment: waiver.*

V. The state requested the court to give the following instructions to the jury: " The allegation of force is proved by any competent evidence showing that either the person of the woman was violated, and her resistance overcome by physical force, or that her will was overcome by duress or fear. In either case, the crime is complete, although she ceased all resistance before the act was finally consummated." The court modified the instruction as follows: "But before the defendant can be convicted of rape, it must be shown that Mrs. McGlashen did not consent to intercourse, but that she used all resistance in her power, under the circumstances, up to the time of the intercourse." As thus modified, the instruction was given

*4. RAPE: resistance: consent: instruction.*

to the jury. This instruction is claimed to be erroneous, because there was no evidence that the intercourse was accomplished by duress or through fear. We think there is no merit in this objection. If violently throwing the woman upon the floor, tearing the skirt of the dress from the waist, bruising her person, threatening to kill her, and struggling with her as described by the prosecuting witness, did not put her under duress and in fear, she must have been a remarkable woman. It is further claimed that the instruction is erroneous because it limits the resistance " up to the time of the intercourse." It is said this means to the commencement of intercourse only, and that, if she consented during its progress, the crime was not committed. This is an unwarranted criticism of the instruction. Its whole scope is to the effect that, in order to convict, the jury must find that she did not at any time consent to the criminal act. The judgment of the district court will be                AFFIRMED.