Decided 1 July, 1901.

## STATE *v.* OGDEN.

[ 65 Pac. 449.]

CRIMINAL LAW—CROSS EXAMINATION ON CHARACTER OF ACCUSED.

39  195
45  350

1. When. a person accused of a crime calls witnesses who testify that his general reputation is of a nature tending to negative the truth of the charge against him, such witnesses may be cross-examined as to their knowledge of the prior commission by accused of acts similar to that for which he is on trial.

SHOWING GENERAL REPUTATION OF ACCUSED AND WITNESSES.

2. It is never competent to attack the general reputation of a person accused of crime unless he has first offered testimony in favor of his reputation; but either side may at any time attack the reputation of witnesses.

STATUTORY RIGHT OF CROSS-EXAMINATION.

3. Section 837, Hill's Ann. Laws, giving either party the right to cross-examine opposing witnesses on any matters stated in their direct examination or connected therewith, confers an absolute right to inquire into the extent and character of the knowledge of a witness concerning matters testified to in chief; thus, where a defendant charged with rape has introduced evidence of the bad reputation of the injured person for chastity, and the state has called a witness who testified that her reputation in that respect was good, the defendant had a right, not resting in the discretion of the judge, to inquire if the witness had heard of her having been discharged from different places because of immoral conduct.

DISCRETION OF COURT—LEADING QUESTIONS.

4. Hill's Ann. Laws, § 835, authorizing the court, in the exercise of a sound discretion, to allow leading questions to be asked on direct examination, does not give the court arbitrary power to allow leading questions, but there must be some special circumstance, as unwillingness, youth, infirmity, lack of memory, or ignorance on the part of the witness, calling for the exercise of discretion.

APPEAL—PRESUMPTION OF CORRECT TRIAL.

5. Where the trial court has allowed the prosecutrix in a rape case, who is twenty-one years old and in ill health, to be asked leading questions on direct examination, it will be presumed, in the absence of contrary evidence, that the embarrassment of the witness authorized the court to allow such questions.

RAPE—COMPLAINT BY PROSECUTRIX.

6. In prosecutions for rape it is competent to show by the prosecutrix that she complained of the assault, and when and to whom.

IDEM.

7. In such cases it is competent to show, and by the prosecutrix, if she knows, that some of the persons to whom complaint was made can not be called as witnesses, and the reason why.

IMPEACHMENT OF PREVIOUS STATEMENTS.

8. Under Hill's Ann. Laws, § 841, allowing a witness to be asked if he has not at other times made statements inconsistent with his present testimony, but requiring such statements to be related to him, and the circumstances to be detailed, a witness can not be asked if he did not make other statements at the preliminary hearing, without reciting such alleged statements.

IMPEACHMENT—OMISSION NOT AN INCONSISTENCY.

9. The failure of a witness to detail all the facts with particularity in her testimony on a previous occasion is not a ground of impeachment, for an omission is not an inconsistency, within the meaning of Section 841 of Hill's Ann. Laws.

IMPEACHMENT—OMISSION NOT A DISCREPANCY.

10. The fact that in a previous proceeding a witness did not testify to certain things that are now testified to does not constitute a discrepancy between the two statements, unless the witness was on the first occasion specially asked about the very things that were omitted.

RAPE—PHYSICAL EXAMINATION OF PROSECUTRIX.

11. A prosecutrix in a rape case need not be required to state if she was examined after the commission of the offense, for it is immaterial, as a matter of law, whether she was examined or not, whatever may be the force of an argument to the jury on that point.

RAPE—SHOWING PREVIOUS UNCHASTITY—CROSS-EXAMINATION.

12. A person charged with rape may show that the reputation of the prosecutrix for chastity is bad, if she is of the age of consent, and he may also show previous acts of intimacy by her with himself; but he may not inquire whether the prosecutrix had ever previously been intimate with any other person.

IMPEACHMENT—HOSTILITY OF WITNESS.

13. A witness may be asked on cross-examination concerning feelings of hostility between himself and the person to whom his testimony refers, but the inquiry must be limited the feeling of the witness for or against that person: *State* v. *Welch*, 33 Or. 33, applied.

WITNESSES—KNOWLEDGE OF SUBJECT.

14. Before a witness can be permitted to testify on a matter requiring special information it must be shown that the witness called has at least some knowledge of the subject referred to; thus, in a rape case, the mother of prosecutrix, who is not a physician, can not be asked if the ill health of prosecutrix is not due to intercourse with men.

From Union : ROBERT EAKIN, Judge.

William Ogden, feeling aggrieved at a conviction of rape on Maude Fairbanks, appealed.      REVERSED.

For appellant there was a brief and an oral argument by *Mr. F. S. Ivanhoe.*

For the state there was a brief over the names of *D. R. N. Blackburn*, Attorney-General, and *Samuel T. White*, District Attorney, with an oral argument by *Mr. White.*

MR. JUSTICE MOORE delivered the opinion.

The defendant having been convicted of forcibly ravishing the prosecutrix in Union County, Oregon, July 19, 1899, appeals from the judgment which followed such conviction.

As a witness in his own behalf, he denied being guilty of any improper conduct towards the prosecutrix, and introduced testimony tending to show that her general reputation for chastity and virtue in the community in which she resided was bad, whereupon the state called in rebuttal one Charles Oleson, who having testified that he was acquainted with her reputation in these respects, and that it was good, as far as he had heard, the following questions were propounded to him on cross-examination : "Did you ever hear of her being discharged from A. Dickson's, the liveryman there [at La Grande], on account of immoral conduct?" "Did you know of her being discharged by J. A. Darrin from the Eagle Restaurant on account of her immoral character?" "Did you ever hear of her being discharged by Mrs. Richard Kelly on account of her immoral habits?" Objections having been sustained to these interrogatories, and exceptions allowed, the defendant's counsel offered to prove by said witness the facts implied in the questions so objected to, but, the proffer having been rejected, an exception was allowed ; and it is insisted that the court erred in these particulars.

1. The rule is well settled that, when a defendant in a criminal action calls in his behalf witnesses who testify that he possesses such a general reputation as tends to negative the commission of the crime with which he is charged, these witnesses may be interrogated on cross-examination in respect to their knowledge of his prior commission of specific acts similar in character to that of which he is accused, to rebut the additional presumption

of his innocence which is raised by their testimony in chief : *Ingram* v. *State*, 67 Ala. 67 ; *Thompson* v. *State*, 100 Ala. 70 (14 South. 878); *State* v. *Pain*, 48 La. Ann. 311 (19 South. 138); *People* v. *Ah Lee Doon*, 97 Cal. 171 (31 Pac. 933); *McDonel* v. *State*, 90 Ind. 320 ; *Basye* v. *State*, 45 Neb. 261 (63 N. W. 811); *People* v. *Pyckett*, 99 Mich. 613 (58 N. W. 621); *State* v. *Crow*, 107 Mo. 341 (17 S. W. 745); *People* v. *McKane*, 143 N. Y. 455 (38 N. E. 950). Thus, in *State* v. *Jerome*, 33 Conn. 265, a witness called by defendant, who was on trial for rape, testified that he was of good character, whereupon such witness was compelled on cross-examination to answer a question as to whether a certain lewd woman had not lived for some time in the defendant's family; and it was held that no error was thereby committed. The reason for this rule is that if the party charged with the commission of a crime seeks to supplement the presumption of his innocence, which the policy of our jurisprudence affords, by testimony of general reputation necessarily adverse to the commission of the crime charged, he thereby invites a scrutiny into the issue of fact which he voluntarily precipitates, and subjects the witnesses whom he has called for that purpose to be interrogated on cross-examination in respect to their knowledge of his commission of generic offenses, not as substantive evidence of his perpetration of independent criminal acts, but to test their veracity and the extent of their information upon the subject-matter to which they have testified in chief, for the purpose of controverting the general reputation which they have ascribed to him.

2.    While the general reputation of a party accused of the commission of a crime is never assailable except when he invites the attack, the general reputation of a witness for veracity is always the subject of inquiry : *McDonald*

v. *Commonwealth*, 86 Ky. 10 (4 S. W. 687); *Evansich* v. *Railroad Co.* 61 Tex. 24. A court should be much more careful of the rights of a party to an action than of the mere privileges of a witness, for he may be deprived of his life, restrained of his liberty, or divested of his property by the judgment therein, while a witness called by either party is not affected by the adjudication. And, as we have seen, a witness called for the defendant in a criminal action to establish his reputation as to any specific trait of character is required to testify on cross-examination in relation to similar specific offenses committed by the accused, *a fortiori* the witness who is called to testify concerning the general reputation of another witness ought to be required on cross-examination to detail with much greater particularity all the facts and circumstances that may in any manner tend to limit or qualify his opinion, illustrate his motive, or test his veracity.

3. In *People* v. *Annis*, 13 Mich. 511, it was held that when a witness called for the purpose of impeaching another testifies to his bad reputation for truth, and upon cross-examination gives the name of the person he has heard speak against him, the witness may be required to state what was said by such person ; the court saying : "The real purpose of this cross-examination is to enable the court and jury to determine whether the impeaching witness in fact knows the general reputation of the other, and, if so, whether he testifies truly in regard to it." In *Wachstetter* v. *State*, 99 Ind. 290 (50 Am. Rep. 94), the accused, being on trial for larceny, called one William Lee, who testified in his behalf, whereupon the state introduced testimony tending to impeach Lee by showing that his moral character was bad. The accused then called Stapp and Wilson as witnesses, for the purpose of

sustaining his reputation for truth and veracity, who, on
their cross-examination, were interrogated as to whether
they had ever heard rumors of Lee having been arrested
for grand larceny, of his giving an assumed name, and
of his having committed certain robberies, to which they
gave negative answers, and, the accused having been con-
victed, his counsel, upon appeal, insisted that the court
erred in permitting these interrogatories to be propounded
to Stapp and Wilson on their cross-examination, because
their testimony in chief related to the inquiry into Lee's
reputation for truth and veracity only ; but it was held
that no error was thereby committed, the court saying :
" We are not inclined to adopt this view of the question
under consideration. Truth or veracity is a trait of the
man of integrity and honesty. It is never a trait of the
thief or robber. The reputation for dishonesty or crim-
inal conduct is, we think, utterly inconsistent with a good
reputation for truth and veracity. We mean, of course,
such dishonesty or criminal conduct as was imputed to
Lee in the questions propounded by the state to Stapp
and Wilson, and complained of by the appellant. When
Stapp and Wilson had testified that the reputation of Lee
for truth and veracity was good, it was competent for the
state to show upon cross-examination that Lee had been
reputedly under arrest or in the station house on a charge
of felony. If the witness Stapp had answered the ques-
tions propounded to him by saying that he had heard of
Lee's arrest for grand larceny, and of his giving the name
of William Smith, and of his being in the station house,
such evidence would have been as inconsistent and as
completely at variance with his evidence in chief as it
would have been if he had testified on cross-examination
that he had heard that Lee's general reputation for truth
and veracity was not good. If Stapp had answered the
questions put to him by the state in the affirmative, his

testimony would not, of course, have proved that Lee was guilty of the larceny mentioned therein, but such answer would have strongly tended to show that Stapp's evidence in chief was unworthy of belief.''

In *DeKalb County* v. *Smith*, 47 Ala. 407, an action having been brought against the county, in pursuance of an act of the legislative assembly, to recover damages resulting from an attack by a mob, Smith gave evidence of an assault and battery committed upon him by unknown and disguised persons, whereupon, the county having assailed his character for truth, he was permitted, on cross-examination of the witness called to impeach him, to prove that, although such witness did not know of any enemies the defendant in error had in the vicinity in which he lived, he was of the opinion, from rumor, that he did have some foes.   Oleson having testified that the reputation of the prosecutrix for chastity and virtue was good, "as far as he had heard," the questions propounded to him on cross-examination were calculated to call his attention to the alleged rumors derogatory of her character in these respects, and to test his veracity in attributing to her such general reputation.   Our statute provides that the adverse party may cross-examine the witness as to any matter stated in his direct examination or connected therewith :  Hill's Ann. Laws, § 837.   The questions so propounded to him related to and were connected with the matter stated by him in his direct examination, and, the court not having permitted him to answer any of them, such action was not the exercise of judicial discretion as to the extent of his cross-examination, but the denial of an absolute right guaranteed to the defendant, which necessitates a reversal of the judgment.

4.   In view of the conclusion reached, it is deemed essential to consider some of the other questions likely

to arise again upon a new trial. It is contended by appellant's counsel that the court erred in permitting the district attorney, over their objection and exception, to propound leading questions to the prosecuting witness on her direct examination. Our statute, in prescribing the method of examining witnesses, as far as it is deemed applicable, is as follows : "On a direct examination, leading questions are not allowed, unless merely formal or preliminary, except in the sound discretion of the court, under special circumstances, making it appear that the interests of justice require it ": Hill's Ann. Laws, § 835. The discretion thus vested, however, is not arbitrary or absolute, and if, on appeal, it appear that leading questions were permitted over objection on direct examination, under circumstances indicating a manifest abuse of such discretion, the judgment will be reversed : 1 Thompson, Trials, § 357 ; *Towns* v. *Alford*, 2 Ala. 378 ; *Cope* v. *Sibley*, 12 Barb. 521 ; *Cheeney* v. *Arnold*, 18 Barb. 434 ; *Budlong* v. *Van Nostrand*, 24 Barb. 25 ; *Doran* v. *Mullen*, 78 Ill. 343 ; *Speckmann* v. *Kreig*, 79 Mo. App. 376 ; *Severance* v. *Carr*, 43 N. H. 65 ; *Turney* v. *State*, 8 Smedes & M. 104 (47 Am. Dec. 74). After the preliminary interrogatories have been answered, conditions may exist or arise that will justify the continuance of leading questions on direct examination, such as the unwillingness of the witness to testify upon the subject under investigation, his youth, ignorance, infirmity, or lack of memory, which a suggestion may revive.

5. In the examination of a transcript on appeal to ascertain if the first enumerated exception existed, it is almost impossible to determine with any degree of certainty the mental condition of the witness, so as to be able to say, as a matter of law, that the discretion vested in the trial court has been abused. The unwillingness

of the prosecuting witness to testify might result from her youth, physical condition, experience, sex, or surrounding conditions, all of which it was necessary to consider, to determine whether her mind was free from restraint or embarrassment. The transcript shows that at the time of the trial she was twenty-one years old, in ill health, and, having been called before a jury of men to detail the circumstances of the alleged assault upon her, the trial court must have observed her mental condition; and, having permitted leading questions to be propounded to her on her direct examination, it must be presumed, in the absence of any evidence to the contrary, that her embarrassment or excitement was such as to justify the course adopted.

6. The prosecuting witness testified that on the night of July 19, 1899, as she and the defendant were returning in a single top buggy from Island City to her home, at Cove, he seized and bruised her arm, whereupon she sprang from the carriage and ran back, but, turning the team, he pursued and overtook her, forcibly replaced her in the buggy, and there assaulted her; that the next morning she told her mother, father, and sister how she had been outraged, and also showed her aunt, Mrs. Alice Brown, the contusion on her shoulder and the abrasion on her knee. The district attorney, referring to Mrs. Brown, asked the following question: "Do you know her condition physically?" An objection to this interrogatory on the ground that it was incompetent, irrelevant, and immaterial having been overruled, and an exception allowed, the witness answered: "My aunt is sick in bed. That's the reason she couldn't come. She has a young baby that is sick, also; and her father-in-law is sick." Defendant's counsel thereupon moved to strike out this answer for the reasons assigned before it

was given, and because it was not responsive to the question propounded ; but, the motion having been overruled, an exception was saved, and it is contended that the court erred in these respects.   The mother and sister of the .prosecutrix, as witnesses for the state, corroborated her in respect to the complaint which she made to them of the alleged assault on the morning after she claimed it was committed, and they also testified that she showed them her knee, arm, and shoulder, which they found to be bruised.   It was competent for the prosecutrix to state on her direct examination when and to whom she complained of the assault alleged to have been made upon her :  *Griffin* v. *State*, 76 Ala. 29 ;  *People* v. *Barney*, 114 Cal. 554 (47 Pac. 41) .

7.    The complaint was a circumstance tending to corroborate her testimony, and the ill health of one of the persons to whom it was made did not preclude the naming of such person, or prevent the injured party from explaining the reason for her nonattendance, especially as the testimony of the prosecutrix had been corroborated by that of her father, mother, and sister in respect to her complaint.

8.    The transcript shows that, at the defendant's preliminary examination in the justice's court upon the charge of which he was subsequently convicted, the prosecutrix gave testimony against him ; and upon her cross-examination at his trial the following questions were propounded to her, to wit :  "Did you state in the justice's court all the language that the defendant used to you at this time?"   "Why didn't you state in the justice's court that he told you there would be a mudhole further on?"   "Why didn't you testify in the justice's court that you would tell your father and Jim [her brother], and he [the

defendant] would be sorry for what he did?'' ''Don't you remember that in that examination down there you were repeatedly asked to state every detail, and give all the conversation and everything said to you from the time he commenced until you got home?'' ''And didn't you at that time attempt to give a detailed statement of that conversation and all of the acts of the defendant?'' ''Didn't you at that time state that what you gave them as your evidence included all the statements that he made, and all the acts that he was guilty of?'' Objections thereto having been sustained, and exceptions saved, it is contended that, if the questions so propounded had been answered by the prosecutrix, her replies thereto would have tended to impeach her, and hence the court erred in sustaining objections to such interrogatories. Section 841, Hill's Ann. Laws, prescribing one of the methods of discrediting a witness is as follows : ''A witness may also be impeached by evidence that he has made, at other times, statements inconsistent with his present testimony; but before this can be done, the statements must be related to him, with the circumstances of times, places, and persons present ; and he shall be asked whether he has made such statements, and if so, allowed to explain them.'' If the questions so objected to were intended to lay the foundation to impeach the witness, they are insufficient for that purpose, because they do not purport to state any testimony given by her at the defendant's preliminary examination.

9. The ruling was correct for the further reason that the omission to detail the facts on the prior occasion with greater particularity is not inconsistent with the testimony given by her at the trial.

10. Nor can such omission be regarded as a discrep-

ancy in her testimony, unless it clearly appears that her attention was specially attracted, and she was asked to testify concerning the very facts embraced in the questions propounded at the trial. Thus, in *Commonwealth* v. *Hawkins*, 3 Gray, 463, the defendant being on trial charged with murder, his counsel sought to show by the depositions of certain adverse witnesses, taken before the coroner, that they had there omitted material facts to which they had testified at the trial, and insisted that the latter testimony was so important that the witness could not, consistently with the operation of an active memory and the promptings of a good conscience, have omitted such facts at the inquest, and remembered them at the trial. But it was held that the mere omission to state a fact, or stating it less fully, before the coroner was not sufficient to render the depositions admissible to impeach the witnesses upon that ground, unless their attention had been particularly called to such facts at the inquest. So, too, in *Huebner* v. *Roosevelt*, 7 Daly, 111, it was held that a witness could not be impeached by showing that certain circumstances to which he testified on the pending inquiry were omitted by him when testifying concerning the same occurrence at a former trial of the action, unless at the former trial the attention of the witness had been particularly called to the circumstances which he then omitted to state. It does not appear from the questions propounded that at the preliminary examination the prosecuting witness was requested to testify concerning a mudhole, or that she was asked if she told the defendant that she would inform her father or brother of the treatment she had received from him, or that he would be sorry for his conduct. The statement embodied in the question to the effect that the prosecutrix remembered that at the preliminary examination she was repeatedly asked to state every detail is not

such a particularization as is required when testimony at a former trial has been omitted, and hence no error was committed in sustaining objections to such interrogatories.

11.   An exception having been allowed, it is contended by defendant's counsel that the court erred in sustaining an objection to the following question propounded to the prosecutrix on her cross-examination, to wit : "Did either your mother, your sister, or any one else,—a physician or anybody,—make any examination of your private parts, to see whether you had had connection with anybody, when you were making these disclosures?"   In *Barnett* v. *State*, 83 Ala. 40 (3 South. 612), it was held that no error was committed in refusing to charge, when so requested, that a party accused of the crime of rape could not be convicted thereof unless the testimony of the prosecutrix was corroborated by an examination of her person by medical or other experts, and that her refusal to submit to such examination would subject her evidence to discredit ; the court saying : "However forcible such a suggestion may be, under some circumstances, as an argument to a jury, the law does not require it." To the same effect, see *State* v. *Lattin*, 29 Conn. 389.   In the case at bar the prosecutrix was of sufficient age to understand the nature of an oath, and competent to give testimony in respect to the assault alleged to have been made upon her, and, this being so, an examination of her person by medical experts or others was unnecessary ; and hence the interrogatory was immaterial, and no error was committed in sustaining an objection thereto.

12.   The following question having been propounded to the prosecutrix on her cross-examination, to wit : " I want to ask you whether previous to that night you ever had intercourse with anybody," an objection thereto was

sustained; and, an exception having been reserved, it is insisted that an error was committed in this particular. The rule is well settled that, on the trial of a party charged with the commission of rape, it is competent for him to impugn the virtue of the prosecutrix, if she is of statutory age, not with a view of justifying or even excusing his conduct, but for the purpose of showing that her general reputation for chastity is bad; thereby creating a presumption that the act of which she complains was consummated with her consent, and not by force : *McQuirk* v. *State*, 84 Ala. 435 (4 South. 755, 5 Am. St. Rep. 381); *Pleasant* v. *State*, 15 Ark. 624 ; *Bedgood* v. *State*, 115 Ind. 275 (17 N. E. 621); *Benstine* v. *State*, 2 Lea, 169 (31 Am. Rep. 593); *State* v. *Freeman*, 100 N. C. 429 (5 S. E. 921); *Wilson* v. *State*, 17 Tex. App. 525. While the law affords the same measure of protection to a libidinous woman that it guarantees to one of the most chaste character (*Higgins* v. *People*, 1 Hun, 307), the jury, in considering the apparent necessity for a resort to force by the accused of ravishing the former, may reasonably infer, where the question of force or want of consent is controverted (*Steinke* v. *State*, 33 Tex. Cr. App. 65, 24 S. W. 909, 25 S. W. 287), that she who by the devices of her nefarious craft has invited or brazenly solicited meretricious intercourse will offer, when importuned therefor, but little resistance to what has been to her a matter of ordinary traffic. If the prosecutrix has attained the legal age, so as to be able to yield her consent to her own degradation, her character may be challenged, for the same reason, by inquiring of her on cross-examination whether she has ever had illicit sexual intercourse with the accused at any time prior to the act with the commission of which he is charged; evidence of such previous connection being admissible to give rise to a presumption that she consented to the act in question : *Barnes* v. *State*, 88 Ala.

204 (7 South. 38, 16 Am. St. Rep. 48); *State* v. *Cook*, 65 Iowa, 560 (22 N. W. 675); *Hall* v. *People*, 47 Mich. 636 (11 N. W. 414); *People* v. *Goulette*, 82 Mich. 36 (45 N. W. 1124).

In these respects the law is uniform, but upon the question of proving specific acts of unchastity committed by the prosecutrix, or requiring her to state on cross-examination whether she has ever been guilty of illicit sexual intercourse with any person other than the accused, a diversity of judicial utterance exists. In *People* v. *Abbot*, 19 Wend. 192, the Supreme Court of New York, in 1838, held that on the trial of a person charged with the crime of rape the inquiry might be made of the prosecutrix whether she had previous connection with other men. In *People* v. *Jackson*, 3 Parker, Cr. Rep. 391, decided by the same court in 1857, it was held that on the trial of an individual for rape it was not competent on the part of the defense to prove acts of illicit sexual intercourse between the prosecutrix and persons other than the defendant; the court saying: "It is true that Judge COWEN, in the case of *People* v. *Abbot*, 19 Wend. 192, disapproved of the rule, strongly sustained as it is by numerous judicial decisions and the opinions of many of the elementary writers; but the point was not necessarily raised in that case, as the conviction was reversed on the ground that the court of general sessions, before which the trial for rape had been conducted, had no jurisdiction of the case, and what was said by the learned judge as to the rejection of evidence was a mere *obiter dictum*." The principle announced in *People* v. *Abbot*, 19 Wend. 192, has been followed in *Woods* v. *People*, 55 N. Y. 515 (14 Am. Rep. 309); *People* v. *Benson*, 6 Cal. 221 (65 Am. Dec. 506); *Benstine* v. *State*, 2 Lea, 169 (31 Am. Rep. 593); *State* v. *Murray*,

39 OR.—14.

63 N. C. 31 ; *State* v. *Johnson*, 28 Vt. 512 ; *State* v. *Reed*, 39 Vt. 417 (94 Am. Dec. 337).

The great weight of authority, however, is opposed to this view, and supports the proposition that evidence of specific acts of unchastity on the part of the prosecutrix with others than the defendant is inadmissible : *Boddie* v. *State*, 52 Ala. 395 ; *McQuirk* v. *State*, 84 Ala. 435 (4 South. 775, 5 Am. St. Rep. 381); *Shartzer* v. *State*, 63 Md. 149 (52 Am. Rep. 501); *Pleasant* v. *State*, 15 Ark. 624 ; *Wilson* v. *State*, 16 Ind. 392 ; *State* v. *Jefferson*, 28 N. C. (6 Ired.) 305 ; *State* v. *Ward*, 73 Iowa, 532 (35 N. W. 617); *Camp* v. *State*, 3 Kelly, 417 ; *Commonwealth* v. *Regan*, 105 Mass. 593 ; *Commonwealth* v. *Harris*, 131 Mass. 336 ; *People* v. *McLean*, 71 Mich. 309 (38 N.W. 917, 15 Am. St. Rep. 263); *State* v. *White*, 35 Mo. 500 ; *State* v. *Forshner*, 43 N. H. 89 (80 Am. Dec. 132); *State* v. *Knapp*, 45 N. H. 148 ; *State* v. *Campbell*, 20 Nev. 122 (17 Pac. 620); *McCombs* v. *State*, 8 Ohio St. 643 ; *Pefferling* v. *State*, 40 Tex. 486 ; *Dorsey* v. *State*, 1 Tex. App. 33 ; *Rogers* v. *State*, 1 Tex. App. 187 ; *Jenkins* v. *State*, 1 Tex. App. 346 ; *Mayo* v. *State*, 7 Tex. App. 342 ; *Lawson* v. *State*, 17 Tex. App. 292 ; *Fry* v. *Commonwealth,* '82 Va. 334.    The reason upon which the rule supported by such a weight of judicial authority should rest is that while a prosecutrix, as a witness in an action of rape alleged to have been committed upon her, is expected to defend her general reputation for chastity, she can not anticipate the charges of specific acts of illicit intercourse which may be made by men who perhaps have been suborned to testify that they have had such connection with her, so as to secure the acquittal of the accused ; and for this reason evidence of specific acts of unchastity is wisely excluded, on the theory that if she has been dissolute her general reputation has suffered in consequence thereof, upon the proof of which the jury may reasonably infer that she yielded her consent to the particular act

with the commission of which the accused is charged. The word "anybody," embraced in the question objected to, was broad enough to include the defendant; and, while she would have been obliged to answer the question if it had referred to him alone, the generality of the interrogatory propounded precludes the necessity of answering it in that form, and hence no error was committed in sustaining an objection thereto.

13.   Mrs. St. John, having testified as a witness for the state, in rebuttal, testified that she was acquainted with the general reputation of the prosecutrix in the community in which she resided, and that such reputation was good, whereupon she was asked on cross-examination if she was the mother of Jerry and Don Peterson, to which she replied, "Yes." She was then asked, "Is it not a matter of fact that they have had some difficulty with this defendant?" An objection having been sustained to this interrogatory, and an exception allowed, it is claimed that the court erred in not permitting her to answer the question. In *State* v. *Welch*, 33 Or. 33 (54 Pac. 213), it was held that, while it is always competent to show the feeling entertained by a witness towards a person about whom he is testifying, such inquiry must be limited to the feeling of the witness for or against that person, and can not be extended to his children.

14.   The prosecutrix's mother having appeared as a witness for the state, the following question in respect to the prosecutrix was propounded to her on cross-examination : "Isn't it it a fact that the origin of that female trouble was her intercourse with men?" The court having sustained an objection to this interrogatory and allowed an exception, it is insisted that an error was committed in not requiring the witness to answer the question. It

does not appear that the witness was a physician, or competent to express an opinion upon the subject to which her attention was called ; and, this being so, no error was committed in sustaining the objection. But, in consequence of the error in refusing to permit the witness Oleson to answer the questions propounded to him on cross-examination, the judgment is reversed, and a new trial ordered.    REVERSED.