## THE PEOPLE v. JAMES PYCKETT.

*Criminal law—Conduct of prosecutor—Evidence.*

1. Cases will not be reversed because incompetent questions were asked and ruled out, on the ground that they might have prejudiced the jury.

   So held, where incompetent questions by a prosecuting attorney in a criminal case were ruled out by the court, and the ruling was accepted by that officer without any statement of what he proposed to prove, and the court stated to the jury that they were "to take nothing from a question unless there was something in the testimony of the witness which showed there was something in it;" the presumption being that the jurors possessed sufficient intelligence and common sense to follow the instruction given, and decide the case upon the evidence.[1]

2. Where testimony is introduced in a criminal case as to the good character of the respondent, it is proper, on cross-examination, to inquire in regard to specific acts of the respondent which occurred prior to the commission of the offense charged

Exceptions before judgment from Lenawee. (Lane, J.) Argued February 1, 1894. Decided April 10, 1894.

Respondent was convicted of the crime of arson. Conviction affirmed, and court advised to proceed to judgment. The facts are stated in the opinion.

*A. F. Freeman* and *Walter C. Burridge,* for respondent.

*A. A. Ellis,* Attorney General, and *Fred B. Wood,* Prosecuting Attorney, for the people.

GRANT, J. The principal error relied upon for a reversal of this case is found in the alleged misconduct of the prosecuting attorney in asking certain incompetent ques-

---

[1] As to the treatment of witnesses and their testimony by the prosecuting attorney, see *People v. Margeson,* 99 Mich. 146, and note.

tions and making certain statements. Scott Remington, a witness for the people, had testified to certain conversations with the respondent, both before and after the barn was burned. The witness was testifying to a conversation with the respondent after the fire, when he remarked that he looked rather pale. This and one other similar statement were promptly ruled out by the court. The prosecuting attorney then asked.

"What was his appearance at that time, if anything out of the way?"

As his reason for asking the question, he stated:

"It seems to me anything striking in a man's appearance, when he has practically confessed his guilt, is just as strong."

It is not entirely clear that the testimony was incompetent. On redirect examination, the prosecuting attorney commenced a question in the following language: "Now, after the admissions made to you by Mr. Pyckett, as you understood them—" But, before the question was completed, an objection was interposed, and the question excluded. We do not see any substantial error in the above language or questions. The prosecuting attorney might legitimately argue to the jury that the statements made by the witness of this conversation amounted to an admission of guilt. This being so, we are unable to understand how the questions, without answers, could prejudice the jury.

The attorney for the respondent had bitterly attacked this witness, and had subjected him to a long and rigid cross-examination. He was asked: "Have you not said to different ones that you had got to get rid of Mr. Pyckett in that neighborhood?" This witness at first denied, but to a subsequent question, the time, place, and person to whom it was claimed he made the statement being stated, he replied: "I have no recollection of it."

He was questioned at considerable length on this subject. In the light of this cross-examination must be considered the following questions, put by the prosecuting attorney on redirect examination: "If, at the time of the examination, you had come to the conclusion that Mr. Pyckett would be a good man to get rid of in that neighborhood, what produced that opinion in your mind?" and "Whether you had become satisfied of his guilt, that the man was guilty, and for that reason considered him a dangerous man in the community?" The questions were doubtless incompetent, notwithstanding the character of the cross-examination, but they were promptly ruled out by the court, which ruling was accepted by the prosecuting attorney without any statement of what he proposed to prove. Cases will not be reversed because incompetent questions were asked and ruled out, on the ground that they might have prejudiced the jury. The court, in the progress of the trial, said: "Of course, the jury are to take nothing from a question unless there is something in the testimony of the witness which shows there is something in it." It must be presumed that jurors possess sufficient intelligence and common sense to follow such instructions, and decide the case upon the evidence.

Certain of the witnesses testified to the good character of the respondent. On cross-examination, they were questioned in regard to certain criminal acts of which respondent was reported to have been guilty. One Goodrich was. such a witness for the respondent. On cross-examination,. he was asked in regard to a conversation had with the witness Remington on the Sunday following the fire, and. this question was asked:

"Didn't you, on that occasion, say that you knew Mr. Pyckett was a very dangerous man, that you had had. some trouble with him before this, something with regard to some oats or corn, and you did not dare to offend him. in any way for fear of his revenge?"

This conversation was denied. The witness Remington was recalled, and testified that Goodrich made such a statement to him.

The testimony in regard to respondent's reputation was general, and was not limited to the time of the fire, and previous thereto. The question put to the witnesses was this: "Do you know what his reputation for good moral conduct is?" The specific acts about which they were asked upon cross-examination all occurred prior to the fire, and it was competent on cross-examination to ask them in regard to these acts.

The charge of the court was a clear and careful statement of the law by which the jury were to be governed, and particularly so in regard to the alleged admissions. It was a statement of the law which is familiar to the profession, and need not be given here. We think there is no error upon the record.

The verdict is therefore affirmed, and the record remanded, with directions to the court to proceed to sentence.

LONG and HOOKER, JJ., concurred with GRANT, J.

MCGRATH, C. J. (dissenting). Respondent was convicted of arson. The testimony tended to show that respondent was weak-minded, and that he had been harassed and annoyed in various ways about his farm by some one in the neighborhood, and suspected the Wallace boys, whose mother owned the barn which was destroyed, and others. The prosecution relied:

1. Upon statements made by the prisoner before the fire, as tending to show a motive for the act.

2. Upon certain other statements by respondent that he would get even with the parties suspected; that he would fix them; that, if he could not get redress at law, he would take matters into his own hands; and that, if he knew that one G. had taken his whiffletrees, he would fix him before

morning,—that he would burn him out, if he had anything to burn.

3. Upon certain statements made after the fire which, it is claimed, were in the nature of admissions.

4. Upon the testimony of a witness that he saw respondent in the vicinity of the barn about an hour before the fire broke out.

A witness for the prosecution was relating certain statements of the first class, and volunteered the statement that respondent "showed considerable feeling." The court very properly struck out this statement. *By the prosecuting attorney:* "I think the manner of the defendant would speak very much more than his words."

This same witness, in relating statements of the third class, volunteered the statement: "I saw about that time that he looked rather pale." The court struck out this statement.

*Question by prosecuting attorney:* "What was his appearance at that time, if anything out of the way?" (Excluded.)

*By the prosecuting attorney:* "It seems to me anything striking in a man's appearance, when he has practically confessed his guilt, is just as strong."

*Question by prosecuting attorney to same witness:* "Now, after the admissions made to you by Mr. Pyckett, as you understood them—(Objected to.)

"*By the Court*: You may omit that word in describing the talk.

"*Q.* If, at the time of the examination, you had come to the conclusion that Mr. Pyckett would be a good man to get rid of in that neighborhood, what produced that opinion in your mind? (Objected to as incompetent.)

"*The Court:* I think it may be sustained.

"*Q.* Whether you had become satisfied of his guilt, that the man was guilty, and for that reason considered him a dangerous man in the community?"

Another witness had testified to statements of the second class.

*Question by prosecuting attorney:* "From your acquaintance with him [respondent], did you consider his threats

that you have sworn to, or this reference to Mr. Gallup and the Wallaces, as a trivial matter?

"*A.* I did not. (Objected to and stricken out).

"*Q.* You may relate what that talk was in which threats were made, if there were any."

It was the province of the jury to determine whether respondent had practically confessed his guilt, admitted the act with which charged, or had made threats, and not of the prosecuting attorney. Respecting the evidence of the first witness referred to, respondent denied that part of the conversation which the prosecuting attorney termed a confession of his guilt, and the rest of the same conversation, as given by the people's witness, might be regarded as inconsistent with an admission of guilt. The other questions were so clearly incompetent that it is unnecessary to discuss them or their probable effect upon the jury. We have so frequently commented upon like conduct of prosecuting officers that it is unnecessary to repeat what has been heretofore said.

The defense called several witnesses as to the respondent's prior good character. Upon cross-examination, these witnesses were asked as to whether respondent had not been suspected of other crimes and misdemeanors. It is well settled that, when a witness is called to attack or defend character, he can only be asked on his examination in chief as to the general character of the person in question, and he will not be allowed to testify as to particular facts, either favorable or unfavorable to such person, but, upon cross-examination, he may then be asked, with a view to test the value of his testimony, as to particular facts. 1 Tayl. Ev. § 352; 3 Rice, Cr. Ev. § 375; *Reg. v. Wood*, 5 Jur. 225; *State v. Merriman*, 34 S. C. 16. Evidence, however, of general good character previous to the date of the transaction charged cannot be rebutted by evidence of bad character after the act, and the cross-exam-

ination must be confined to acts prior in time to the act charged. It was error to permit a cross-examination of these witnesses as to individual opinions formed and expressed subsequent to the date of the fire, and after certain things had become known which may have cast suspicion upon respondent, and error to allow testimony of other witnesses as to such expressions made "the Sunday following the fire," and "just after the examination," for the purpose of impeachment.

The practice respecting the introduction of evidence of confessions, and the determination of the question as to its competency, is so fully set forth in *People v. Barker,* 60 Mich. 277, that it is only necessary to refer to that case.

I have deemed it unnecessary to consider in detail the assignments of error. It is sufficient to say that this record is saturated with opinion evidence. The prosecuting attorney not only expresses his own opinion, but propounds questions calculated to impress the jury with the conviction that opinions unfavorable to the prisoner exist; calls out upon the trial, from neighbors, expressions of fear respecting their own property, predicated upon the fact of the fire, the arrest of respondent, and the gossip of the neighborhood, aided, perhaps, by reports of suspicious circumstances; is permitted, upon cross-examination of witnesses called to testify as to defendant's previous good character, to call out expressions made after the fire, and based upon conditions then existing, and to introduce, as tending to impeach the witnesses as to good character, statements alleged to have been made after the act charged, and based upon the circumstances then existing.

The conviction should be set aside and a new trial granted.

MONTGOMERY, J., did not sit.