## GEO. RUSSELL v. STATE.

No. A-3025.   Opinion Filed Jan. 17, 1920.

Rehearing Denied Feb. 13, 1920.

(186 Pac. 492.)

(Syllabus.)

1.  **TRIAL—Settlement of and Exceptions to Instructions—Time.**
    The trial court is required to settle, and counsel are required to take exceptions to, instructions before the same are read to the jury.

2.  **SAME—Right of Counsel to be Heard on Instructions.** When requested, it is error for the trial court to refuse to permit counsel for the defendant to have a reasonable opportunity to be heard upon the instructions to be given to the jury before the same are read to the jury.

3.  **SAME—Exception to Instruction After Verdict.** The trial court is without power to make a rule of court which permits counsel on either side to save an exception to an instruction after the verdict of the jury has been returned in a criminal case. It is essential to the validity of a court rule that it must not contravene any constitutional or statutory provision on the same subject.

4.  **APPEAL AND ERROR—Exceptions to Instructions—Time.**
    Where counsel rely for an exception to an instruction given by the trial court upon a rule of the court which directly contravenes the plain provisions of a statute and the decisions of this court construing same (requiring the instructions to be settled before being read to the jury in a criminal cause), on appeal the instruction will be considered as if no objection had been made or exception whatever had been taken to it.

5. **SAME—Instructions not Excepted to—Review.** Where no objection is taken to the instructions of the trial court, such instructions will not be examined by this court for the purpose of discovering other than fundamental error.

6. **TRIAL—Instruction on Failure of Defendant to Take Stand.** The trial court gave the following instruction; "Gentlemen of the jury, you are instructed that a person charged with a crime shall, at his own request, but not otherwise, be a competent witness and his failure to make such request or to take the stand in his own behalf shall not create any presumption against him or be mentioned on the trial." Held, that said instruction is not fundamentally erroneous. The holding of this court in McLaughlin v. State. 14 Okla. Cr. 192, 169 Pac. 657, is distinguished and modified to conform to the holding herein.

7. **APPEAL AND ERROR—Witnesses—Scope of Cross-Examination of Character Witnesses.** A witness to good character may be asked on cross-examination whether or not he has heard rumors of particular and specific charges of the commission of acts inconsistent with the character he is called on to prove, not for the purpose of establishing the truth of such facts or charges, but to test the credibility of the witness and to determine the weight to be given his evidence. The extent of such cross-examination is a matter resting in the sound discretion of the trial court, and a judgment of conviction will not be reversed because the trial court permitted such a cross-examination unless a clear abuse of such discretion is shown.

8. **TRIAL—Argument of Prosecutor not Reversible Error.** The remarks indulged in by the county attorney were not such as to constitute fundamental error, and considering the fact that the defendant made no denial of the incriminating facts and circumstances proved against him, and the further fact that, at the request of defendant's counsel, the court instructed the jury not to consider the only portion of the county attorney's argument objected to, said alleged improper argument cannot be considered reversible error in this case.

*Appeal from District Court, Noble County;*
*W. M. Bowles, Judge.*

George Russell was convicted of statutory rape, and he appeals. Affirmed.

On the 11th day of January, 1916, Blanche De Roin, a female under the age of 16 years, gave birth to a male

child at the home of the niece of this defendant near Warrensburg, in the state of Missouri, to which place the defendant had taken the said Blanche De Roin in the month of September, 1915. After the birth of the child, he was adopted by a man named Smith, who lived in the neighborhood of Warrensburg.

Prior to the happening of the foregoing events, the prosecutrix, Blanche De Roin, and the defendant, George Russell, her stepfather, had lived on the Bar L ranch in the northeastern part of Noble county, Okla. The defendant had married the mother of the prosecutrix in the year 1911, at which time Blanche was 10 or 11 years of age. Blanche testifies that shortly after the marriage of her mother with the defendant, the defendant directed his attentions to her, and in a short time accomplished sexual intercourse with her, a practice that was carried on between them at frequent intervals, resulting in her pregnancy in the month of April, 1915, and the subsequent birth of her child in January, 1916.

The particular act of sexual intercourse relied upon for a conviction, and which resulted in the pregnancy of the prosecutrix, is alleged to have occurred in the home of the defendant and in a room in the second story of the said home, where the prosecutrix and her younger half-sister, Bertha Cunningham, were sleeping. The prosecutrix testified that the defendant, her stepfather, came to her bed early in the morning about the 11th of April, 1915, and accomplished an act of sexual intercourse with her. In this statement she is corroborated by her sister, Bertha Cunningham, who testified that the defendant came to Blanche's room and got into bed with her, and that she saw him on top

of Blanche and described the movements of their bodies, indicating clearly an act of sexual intercourse.

In addition to the evidence relative to the act relied upon for a conviction, the prosecutrix testified to other acts of intercourse with the defendant, which she said were numerous, and as to several she was corroborated by other evidence and by a chain of circumstances clearly indicating an unlawful intimacy between the prosecutrix and the defendant. We deem it unnecessary to go into the minute details of these alleged acts of intimacy and intercourse further than to say that they tend unerringly to the conclusion that an unlawful relationship had existed between the defendant and the prosecuting witness for several years prior to the commission of the act relied upon for a conviction in this case.

In the spring of 1916, immediately subsequent to the birth of her child in January of that year, Blanche De Roin returned from Missouri to the home of her stepfather, and lived there and under the same roof with the defendant until shortly before the institution of this prosecution against him.

After Blanche's return from Missouri, the fact leaked out that she had given birth to a child while at the home of the defendant's niece in Warrensburg. This information resulted in an investigation by the authorities of Noble county, through juvenile proceedings instituted for the benefit of the children, Blanche De Roin and Bertha Cunningham, brought about at the instigation of Lennie Stockdale, an aunt of such children, who then resided in the town of Bliss, Okla. As a result of such investigation, Bertha Cunningham filed a complaint against her stepfath-

er, charging him with the crime of statutory rape on her sister, Blanche. Blanche, however, at that time charged the crime to one Rolla McFarland, a young man living in the neighborhood. Later, however, and after the defendant had been arrested charged with the crime, Blanche filed a complaint against one Chris Anderson, a young man who had commenced to work for the defendant on April 9, 1915, charging him with the offense, and while the evidence shows that the said Chris Anderson had kept company with Blanche, there is no evidence in the record that he ever commenced to pay attentions to Blanche until several months after she became pregnant. Chris Anderson was still working for the defendant at the time he was arrested and charged with the crime, and it so happened that the filing of the complaint against Anderson was within the time of the sitting of a grand jury in Noble county, and, as required by law, his case was submitted to the grand jury, resulting in his discharge.

Up until the time of the hearing before the grand jury Blanche had told several conflicting stories as to who was responsible for her pregnancy. On the trial of this case she says that such stories were told by her at the behest and instigation of the defendant, and on the witness stand she admitted that she had told these several conflicting stories, but explained that defendant had threatened her if she did not tell them, and on the trial she testified positively that no other person than the defendant had ever had sexual intercourse with her.

The defendant did not take the witness stand in his own behalf. He offered evidence by several reputable witnesses to show that prior to the time of the institution of this prosecution his general reputation as an honest, upright, and

law-abiding citizen was good.   Otherwise his entire defense
was directed to the purpose of discrediting the testimony
of the prosecutrix and in an attempt to make the jury be-
lieve that this prosecution was the outgrowth of animosity
upon the part of Lennie Stockdale, defendant's sister-in-law,
against the defendant, and that the purpose of the said
Lennie Stockdale was to blackmail the defendant into the
payment of a sum of money to avoid prosecution.   To this
end the defendant placed the said Lennie Stockdale upon
the witness stand, and introduced in evidence two letters
written by the said Lennie Stockdale under dates of May
17 and 23, 1916, to Mrs. Pearl Byrd, which said letters are
as follows:

"Bliss, Okl., May 17—16.

"Mrs. Pearl Byrd—Kind Friend: I was glad to receive
your letter of the 16 and was glad to hear of Blanchie talked
like she did about me.  I care for her when she was a baby
and care for her until Russell got hold of her and care for
her after to but if Blanchie want to give me tales I dont
care a Dam.  I no of her baby she stayed with me one month
she want me to get reaid of it for but Mrs. Byrd I did not so
george thought he better get her away.  the baby is george.
that is tacking plane but I cannot help but I am sorrow you
did not let me know of it when she was in bed with the
baby.  well Mrs. Byrd you will stay with this will you.  I
heard Blanchie give you some talk like she give you about
me but for myself I have got friends after friends in Bliss
and owt to more them Russell are Blanchie has got george
has not lett Blanchie come to see us sent she come back.
Grandma has been sick but little did Blanchie care.   are
George and Blanchie has been in Bliss times after times but
she dont come down at all.  george will not let Berthie came
at all. I seen Berthie she told me he would let her come down
and Berthie cride about it the poor girl well as I want to
C. E. Smith I am glad you write and don't let this be the

last letter. I have cride all morning ever sent I got your letter it is trowble O trowble george russell does not like me I do not no whether you can reaid this or not I have cry so I will close for this times from your unnone friend Lennie Stockdale. write and let me no what you think of this P. S. place write and let me no what we are do abowt this I wont to be good every one but they dont want to be good to me I have friends after friends so let me no by return mail I think you for writ me this letter I have find out what I want to no I now Blanchie was big when george took her away to get her hid."

"Bliss, Okla., May 23—16.

"Mrs: Pearl Byard—Kind Friend: I have waten up till now and now answers yet a what I wrot you some days ago so please ancwers and tell us more about it as I think I want to know as Blanchie is under age yet Blanchie was born March 26 1901 so she is just 16 years old last March I no becuse I was there. I am 27 years old myself so you can see how old I was when Blanchie was born. Russell say I do not no Blanchie eage he has toll people arownd thear that hes new me for 15 years long before he got in the family at all so writ and tell me more. I wrote C. C. Smith a bout the baby but got no ancures up till yet and say if George russell send you iny money dont take it becuses you can get more then $100.00 if you will do as I want you to do so let me no by return mail as I wont to no all about it so dont wate no longer. you now let me help you and we can get more money than you think we can. Blanchie has toolk about you to me and toolk about me to you. We can sue for Slander money and get every sent. I would tell more if I would see you. I wich you would come down. russell not no you weare thear at all becuse every come to my place at all so let me no as I am going to do something about it. will you help me out, so I will close hopen to hear from you by return mail.

"Yours truley, Lennie Stockdale Bliss."

As part of the cross-examination of the said Lennie

Stockdale, and without objection on the part of the defendant, the letter written by Mrs. Byrd to Mrs. Stockdale was introduced in evidence, to which the foregoing letters are in reply:

"Centerview, Mo., May 16, 1916.

"Mrs. Lennie Stockdale, Bliss, Okl.—Dear Mrs. Stockdale: I got to studying about you to-day and I thought I would write and let you know what tales Blanche told on you while she was here at my house.

"She talked fearfully about you but I didn't believe it. She made out to Grandma and I that you were the worst old Chip. in Bliss and if I were you I'd give her a talking to that she will remember and Grandma says that Chris Anderson, the fellow she goes with, is a nice young man, and I want you to tell him what sort of a girl she is.

"Uncle Geo. brought her here to our house and promised to give us $100.00 if we would smuggle her up and get a home for the baby. She stayed here six months as you know. The 11th of January her baby was born. It was the sweetest little boy with black hair and eyes; weighed 10 pounds. I took care of her and that baby and was up with it 7 or 8 times every night and I washed for her and did everything and here they won't pay us a cent. She wouldn't look at it or take care of it at all, and I intend to inform people around there about it, for she is the whole cause of us not getting the money, and the way for you to get even with her is to let people around there know all about her.

"She adopted the baby to some people who live out three miles from here and if you should doubt it write to C. C. Smith, Holden, Mo. They are the people who got it. She went to Warrensburg and swore she was 20 years old and married a man by the name of Charlie Deroin, then he died with neumonia and she had to go to work to make a living and couldn't keep the baby.

"She also told some funny tales on herself and Uncle Geo which if they are true don't sound very good. And I

pity Aunt Mary for having such a thing as she is around her for she can't cause her anything but trouble, and she told some of the terriblest tales on her own mother. Grandmother is well and would write if she knew I was writing, but she is upstairs asleep. So I will close for this time.

"From a friend,                    Mrs. Pearl Byrd."

To set out in detail all the incriminating facts and circumstances would consume too much space, as the record contains about 400 typewritten pages. The foregoing statement, however, is sufficient for the purposes of this opinion.

*W. B. Clark, W. E. Rice, Henry S. Johnston,* and *H. A. Johnson,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., *R. McMillan,* Asst. Atty. Gen., *H. A. Smith,* Co. Atty., and *P. W. Cress,* for the State.

MATSON, J. (after stating the facts as above). It is first contended that the trial court erred in giving to the jury the following instruction:

"Gentlemen of the jury, you are instructed that a person charged with a crime shall, at his own request, but not otherwise, be a competent witness, and his failure to make such request, or take the stand in his own behalf, shall not create any presumption against him, nor be mentioned on the trial."

While there is indorsed on the instruction:

"Excepted to by defendant. Exception allowed. W. M. Bowles, Judge "

—it is proper in considering this assignment of error to ascertain the exact circumstances under which the giving of such instruction was excepted to. As part of the journal entry of trial we find the following:

"The court then took a recess and prepared the instructions to the jury in writing. Thereafter and at the reconvening of court the instructions so prepared were read to the jury. Thereupon counsel for the defendant, W. B. Clark, Esq., not in the hearing of counsel for the state nor the jury, asked the court if counsel for the defendant would have the benefit of the rule prevailing in the Twelfth judicial district of noting any exceptions upon the instructions after the verdict of the jury. To this request the court assented, and thereafter, on the 13th day of January, 1917, one of the attorneys for the defendant, W. E. Rice, Esq., and after the verdict had been returned by the jury and filed with the clerk, noted in writing the exceptions of defendant to the instructions given by the court as the exceptions appear upon the original instructions given and filed in the case, and the exceptions so taken were at the time signed by the trial judge.

"That after the said instructions had been duly given to the jury, and the cause argued by counsel for the state and for the defendant, and the bailiff duly sworn according to law, and the jury placed in his lawful charge, the jury retired to deliberate of their verdict, and on, to wit, the 11th day of January, 1917, the said jury returned into court the following verdict."

The foregoing excerpt from the record shows conclusively that no exception was taken to the giving of the above instruction until the 13th day of January, 1917, two days after the verdict had been returned. It shows, however, that after the court had read the instructions to the jury, counsel for the defendant, not in the hearing of counsel for the state nor the jury, asked the court if counsel for the defendant would have the benefit of the rule prevailing in that district of noting exceptions upon the instructions after the verdict of the jury had been returned, and the trial court assented to this procedure.

The fifth subdivision of section 5870, Revised Laws 1910, relative to Criminal Procedure, provides:

"When the evidence is concluded, the attorneys for the prosecution may submit to the court written instructions. If the questions of law involved in the instructions are to be argued, the court shall direct the jury to withdraw during the argument, and after the argument, must settle the instructions, and may give or refuse any instructions asked, or may modify the same as he deems the law to be. Instructions refused shall be marked in writing by the judge; if modified, modification shall be shown in the instruction. When the instructions are thus settled, the jury, if sent out, shall be recalled and the court shall thereupon read the instructions to the jury."

It is clear from said statute above quoted that in the trial of criminal cases the court is required to settle, and counsel are required to take exceptions to, instructions before the same are read to the jury.

On motion for a rehearing in the case of *Boutcher v. State,* 4 Okla. Cr. 585, 112 Pac. 762, in construing the foregoing subdivision of section 5870, this court held:

"When the evidence in a criminal case is concluded, the judge should give counsel for the state and counsel for the defendant an opportunity to submit any written instructions which they may desire to be given to the jury, and should also give counsel an opportunity to be heard, either in support of or in opposition to instructions to be given to the jury; and the court should require counsel for the defendant, upon such hearing, to point out what objections, if any, they have to the instructions given to the jury, and these objections should be incorporated in the record."

In the body of the opinion it is said:

"This section clearly contemplates that instructions to juries in criminal cases should be settled before they are

read to the jury, and that, if counsel have any instructions
which they desire to be given, or if they have any objections
to any instructions proposed to be given by the court, it is
the privilege and duty of counsel to point out such matters
to the court before the instructions are read to the jury.
Counsel for the defense have the right to be heard in the
trial court upon the law as well as upon the facts. This
is fair to all parties concerned, and is necessary to the prop-
er administration of justice. It gives the judge an oppor-
tunity to correct any errors which he may have made, and
it gives the county attorney an opportunity, if he thinks the
charge of the court is erroneous, to join with the defendant
in requesting that such error be corrected. If counsel desire
to make objections to the instructions which the court pro-
poses to give to the jury and request permission to do so,
it would be error on the part of the trial court to refuse to
give counsel such opportunity."

It has also been held in the following cases to be error
for the trial court to refuse to permit counsel for the de-
fendant to have a reasonable opportunity to be heard upon
the instructions to be given to the jury before such instruc-
tions are read to the jury. *Thompson v. State*, 6 Okla. Cr.
50, 117 Pac. 216; *Fowler v. State*, 8 Okla. Cr. 130, 126 Pac.
831.

The statute requiring the instructions of the trial court
in criminal causes to be settled before being read to the
jury affords to the defendant an opportunity to request
instructions, and to be heard fully upon the law of the
case relative to the instructions proposed to be given by the
trial court. It affords protection as well to the defendant as
to the court, and such statute may not be abrogated or con-
travened by any rule of the trial court. It is the plain duty
of the trial judge to give counsel on both sides an ample op-
portunity to make proper objection and take proper excep-

tion to the instructions before they are read. It is the duty of counsel on both sides to follow the plain terms of the statute by seeing to it that whatever objections and exceptions they care to make and take to the instructions are made and taken before the instructions are settled.

The trial court has no authority to permit counsel on either side to save an exception to an instruction after the verdict of the jury has been returned in a criminal case. The trial court is without power to make any rule to that effect, and it is evident in this case that no exception was taken to any of the court's instructions in the manner required by law. It is essential to the validity of a court rule that it must not contravene any constitutional or statutory provision on the same subject. 7· Ruling Case Law, 1024, and cases cited.

In *Patterson v. State*, 4 Okla. Cr. 542, 113 Pac. 216, this court held:

"Exceptions to instructions should be taken at the time they are given to the jury, and the trial court has no power to allow exceptions to instructions which are not in fact taken at the time the instructions are given to the jury."

· See, also, *Bashara v. State*, 13 Okla. Cr. 304, 164 Pac. 324.

It follows, therefore, that counsel for the defendant in this case, relying for their exception to the court's instruction upon a rule of the trial court which directly contravenes the plain provisions of the statute and the decisions of this court construing same (requiring the instructions to be settled before being read to the jury in a

criminal cause), are in the same position as if no exceptions whatever had been taken to said instruction.

Further it has been held:

"Where the record shows no objection or exception to the instructions of the trial court, such instructions will not be examined by this court for the purpose of discovering other than fundamental errors on appeal." *Ford v. State,* 5 Okla. Cr. 241, 114 Pac. 274.

See also, *Birdwell v. United States,* 10 Okla. Cr. 159, 135 Pac. 445.

It follows, therefore, that if instruction No. 5, above quoted, is fundamentally erroneous, the giving of the same, under the circumstances disclosed by this record, would be reversible error; otherwise not. Is said instruction fundamentally erroneous? We think not.

Section 5881, Revised Laws 1910, provides as follows:

"In the trial of all indictments, informations, complaints and other proceedings against persons charged with the commission of a crime, offense or misdemeanor before any court or committing magistrate in this state, the person charged shall at his own request, but not otherwise, be a competent witness, and his failure to make such request shall not create any presumption against him nor be mentioned on the trial; if commented upon by counsel, it shall be ground for a new trial."

Section 6005, Revised Laws 1910, provides as follows:

"No judgment shall be set aside or a new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless, in the opinion of the court to which application is made, after an

examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

Under the latter provision, this court is without power to reverse a judgment of conviction because of the misdirection of the jury unless it is apparent from an examination of the entire record that there has been a miscarriage of justice or that the defendant has been deprived of some constitutional or statutory right.

A careful perusal of the transcript of the evidence in this case convinces the court that the trial did not result in a miscarriage of justice. Counsel for defendant do not contend that it did, but it is strenuously contended by them that it is mandatory to reverse the case because of the giving of such instruction. We are of opinion that this contention is not fully warranted by a fair and impartial interpretation of sections 5881 and 6005, *supra*.

The instruction given follows the language employed by the Legislature in section 5881. That section contains a caution against any reference to the fact that the defendant has failed to take the witness stand in his own behalf, either by the court or by counsel. It further provides, "If commented upon by counsel, it shall be ground for a new trial." The Legislature cautioned against even the mention of the fact that the defendant had failed to take the witness stand, and made it ground for new trial when commented upon by counsel. A plain distinction is made between comment by counsel and a mention of the fact by others engaged in the trial. The Legislature, no doubt, apprehended that any comment made by the prosecuting officer would be unfavorable to the defendant, while, on

the other hand, such an inference would not necessarily obtain with reference to the court. Of course, the trial judge might forget himself during the progress of the trial and make an unfavorable remark or comment concerning the defendant's failure to testify, which would be prejudicial to the defendant, and be sufficient ground to authorize a reversal of the judgment, and such mentioning of the defendant's failure to testify would be within the purview of the statute and be sufficiently prejudicial to constitute ground for the granting of a new trial.

The jury was bound to accept the law as given in the court's instructions, and therefore bound not to consider the fact that the defendant failed to take the witness stand as a presumption against him. The instruction given cannot be considered an adverse comment, and it could only be prejudicial upon the theory that the jury wholly disregarded the instruction and refused to be bound by it.

Even should the instruction be considered as a mention of the fact that the defendant did not take the witness stand in his own behalf, its giving would not be fundamental error unless commented upon by counsel, in which event the defendant would be entitled to a new trial. There is no contention made that counsel in any manner commented upon this instruction or upon the failure of the defendant to testify in this case. We reach the conclusion, therefore, that although the giving of said instruction be considered erroneous, no proper objection having been made or exception taken thereto in the manner required by law, and, the error complained of not being fundamental in character, it is without prejudice to the substantial rights of the defendant in this case.

The cases of *Sturgis v. State.* 2 Okla. Cr. 362, 102 Pac. 57, *Brown v. State,* 3 Okla. Cr. 442, 106 Pac. 808, *Nowlin v. State,* 7 Okla. Cr. 27, 115 Pac. 625, 121 Pac. 791, *Weinberger v. State,* 8 Okla. Cr. 441, 128 Pac. 160, *Teer v. State,* 10 Okla. Cr. 651, 135 Pac. 1198, and *Holmes v. State,* 13 Okla. Cr. 113, 162 Pac. 446, cited in the brief of counsel for defendant, are all cases where the judgment of conviction was reversed by this court, among other reasons, primarily because the county attorney in argument to the jury commented upon the failure of the defendant to testify. In the case of *McLaughlin v. State,* 14 Okla. Cr. 192, 169 Pac. 657, in which the judgment of conviction was reversed because of the giving of an instruction similar to the one complained of in this case, timely objection was made and exception taken to the instruction before the same was given, and the trial court's attention in that case was directed specifically to the fact before the instruction was given that the defendant deemed it prejudicial to his rights for the court to give such an instruction. Such is not the record in this case, and the holding here is that, where no objection or exception is properly taken, the giving of such an instruction is not fundamental error and to such an extent the holding in the case of *McLaughlin v. State* is modified to conform to the holding herein.

It is also contended that the court erred in permitting prejudicial and grossly unfair misconduct on the part of the county attorney and his associates during the course of the trial. This assignment of error relates to the cross-examination of witnesses who were called by the defendant to establish his good reputation for honesty, uprightness, and as a law-abiding citizen.

On cross-examination counsel for the state asked several of these witnesses if they had not heard that the defendant had once killed a man; also if they had not heard that he had lived in open and notorious adultery; also if they had not heard that he was in the habit of carrying a gun—all of said facts occurring prior to the commencement of this prosecution. The record discloses that no objections were made to these questions at the time they were asked and answered, but subsequently counsel for defendant moved the court to strike the questions and answers, which motion was overruled.

The record shows that counsel for the state asked only such questions on the cross-examination of these reputation witnesses as were ruled to be proper by the trial court. No misconduct is disclosed by the state's counsel such as has been heretofore condemned by this court in repeatedly asking on cross-examination questions which had previously been ruled to be improper by the trial court. The question here presented, therefore, is whether or not it was error for the trial court to overrule the motion to strike these questions and answers.

In *Stouse et al. v. State,* 6 Okla. Cr. 415, 119 Pac. 271, this court held:

"As the general reputation of any person is established by the opinions of witnesses as to the general estimation of his character, it is permissible upon cross-examination of such witness to show the sources of his information, and particular facts may be called to his attention, and he may be asked if he ever heard of them. This is permissible, not for the purpose of establishing the truth of such facts, but to test the credibility of the witness, and to ascertain what weight or value is to be given to his testimony."

In Underhill on Criminal Evidence (2d Ed.) § 82, the rule is stated as follows:

"But a witness to good character may be asked on cross-examination to test his credibility whether he has heard rumors of particular and specific charges of the commission of acts inconsistent with the character he is called on to prove, and generally as to the grounds of his evidence, not so much as to establish the truth of such facts or charges, as to test his credibility, and to determine the weight of his evidence. He may be asked if he has not heard some general report which contradicts the good reputation he has been called upon to prove. Thus he may be asked on cross-examination whether he had not heard of a difficulty during which the accused had assaulted a person with a knife."

In *McDonald v. State,* 90 Ind. 320, a witness who had testified to the general good reputation for humanity and honesty of the defendant in the neighborhood where he resided was asked on cross-examination as to whether she had heard certain rumors which, had she admitted hearing them, would have materially weakened the force of her evidence in chief. The court said:

"The questions were relevant, not to prove that the appellant had been guilty of the offenses referred to in the question, but to elicit testimony which might affect the credibility of the witness' evidence in chief as to the appellant's reputation for humanity and honesty. One's reputation consists in the general estimation in which he is held by his neighbors. This is to be ascertained from what they generally say of him. When a witness testifies that such reputation is good with respect to some quality or disposition, it is competent to show by his cross-examination that he has heard reports at variance with the reputation he has given the party; and, if his admissions of hearing such adverse rumors go to the extent of showing

that they were general in the neighborhood where the party resided, the effect of the witness' testimony in chief would be destroyed."

In *Basye v. State*, 45 Neb. 261, 63 N. W. 811, it is said:

"It is firmly settled by the adjudications in this country that upon cross-examination of a witness who has testified to general reputation questions may be propounded for the purpose of eliciting the source of the witness' information, and particular facts may be called to his attention, and he be asked whether he ever heard them. This is permissible, not for the purpose of establishing the truth of such facts, but to test the witness' credibility, and to enable the jury to ascertain the weight to be given to his testimony. The extent of the cross-examination of a witness must be left to the discretion of the trial court."

In *People v. Pyckett*, 99 Mich. 613, 58 N. W. 621, it is said:

"The defense called several witnesses as to the respondent's prior good character. Upon cross-examination these witnesses were asked as to whether respondent had not been suspected of other crimes and misdemeanors. It is well settled, that when a witness is called to attack or defend character, he can only be asked on his examination in chief as to the personal character of the person in question, and he will not be allowed to testify as to particular facts, either favorable or unfavorable to such person, but upon cross-examination he may then be asked, with a view to test the value of his testimony, as to particular facts. 1 Taylor on Evidence, § 352; 2 Starkie on Evidence, § 304; 3 Rice, Criminal Evidence, § 375; *Reg. v. Wood*, 5 Jur. 225; *State v. Merriman*, 34 S. Car. 16, 12 S. E. 619."

See, also, *Lowery v. State*, 98 Ala. 45, 13 South. 498; *Smith v. State*, 103 Ala. 57, 15 South. 866; *Sheers v. State*, 147 Ind. 51, 46 N. E. 331; *State v. Ogden*, 39 Or. 195, 65

Pac. 449; *State v. McDonald*, 57 Kan. 537, 46 Pac. 966; *People v. Mayes*, 113 Cal. 618, 45 Pac. 860.

We find no abuse of discretion on the part of the trial court in permitting the witnesses called by the defendant to establish his general reputation as a law-abiding citizen to be cross-examined in the manner above indicated. The adjudicated cases are to the effect that such questions are competent on cross-examination to test the credibility of the witness, and for the purpose of determining the weight and value to be given to his testimony as given in chief. The contention that these questions were asked by the county attorney and the special counsel assisting him without foundation for their truthfulness seems to be lacking of merit in view of the fact that some of the witnesses at least had heard the particular facts and rumors inquired about.

Complaint is also made of certain alleged statements of the county attorney in the closing argument to the jury, but the record shows that the particular argument complained of was not requested to be taken in shorthand, and that, where objection was made to the argument, either the court instructed the jury not to consider, or else it was argument made in reply to previous statements made in argument by counsel for the defendant, to which no objection was interposed at the time.

The remarks indulged in by the county attorney were not such as to constitute fundamental error, and when construed in reference to the evidence in the record before us, considering the fact that the defendant made no denial of the incriminating facts and circumstances proved against him, and the further fact that at the request of the defendant the court instructed the jury not to consider the only part of the county attorney's argument objected to, said

alleged improper argument cannot be considered as constituting reversible error in this case.

We have here the conviction of a man who commenced, according to the state's evidence, his illicit relations with his stepdaughter at the tender age of 11 years, and who continued said illicit intercourse, as testified to by the prosecutrix, almost every day until it resulted in her pregnancy when she was yet but 15 years of age. The fact of prosecutrix's pregnancy becoming known to the defendant, he took her to the state of Missouri to the home of his niece, where the child was born, and, at the defendant's request, adopted into the home of a stranger. Thereafter the defendant and the prosecutrix continued to live in the same home, and if the defendant is not guilty of this offense, it can at least be said of him that he made no effort whatever to discover and punish the guilty party. It was not until the aunt of the prosecutrix had heard of the birth of this child and defendant's conduct in connection with his stepdaughter that any effort was made to discover and punish the guilty party. It was then, as testified to by the prosecutrix, that at the behest and request of the defendant she at different times charged this offense to other parties, one of whom had lived with the defendant during the time that he had taken the prosecutrix to Missouri, and up until the very minute that such party was arrested and charged with the crime. If said party was guilty of the offense, the defendant certainly by very little effort on his part could have obtained such information before he took his stepdaughter to Missouri, and defendant would have at least either required such young man to have married his stepdaughter, or else, if not guilty himself, would have seen to it that just punishment was meted out to the aforesaid

young man long before the defendant was charged with the offense himself.

The failure of the defendant to do the things that ordinarily would have been done under such circumstances by an innocent person, and his failure to deny any of the incriminating facts and circumstances proved against him, point unerringly to his guilt. The defendant had the benefit of able counsel. The punishment imposed was fixed at three years in the penitentiary, and the jury was extremely lenient with him.

Finding no error in the record such as would authorize the reversal of this judgment and conviction, it is the opinion of the court that the same should be affirmed; and it is so ordered.

DOYLE, P. J., and ARMSTRONG, J., concur.