O. C. SMITH et al. v. STATE.

No. A-6822. Opinion Filed Nov. 30, 1929.
Rehearing Denied Dec. 21, 1929.
(283 Pac. 579.)

Jess L. Ballard and Richard L. Wheatley, for plaintiffs in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

CHAPPELL, J. Plaintiffs in error, hereinafter called defendants, were jointly charged, tried and convicted in the district court of Ottawa county of the crime of forgery, and each sentenced to serve a term of four years' imprisonment in the state penitentiary.

The evidence of the state tends to show that the crime charged was thoroughly planned before it was executed, and that it was finally consummated step by step as planned, and that each step taken toward the commission of the offense was taken with the view of interposing the very defense that was made in the trial of the case. That there was a crime committed is not denied. That these were lending active aid and comfort to the central figure in its commission during various steps of its commission is not disputed. The only question of fact so far as these defendants are concerned is whether or not this evidence, with the inferences properly to be drawn therefrom, is sufficient in law to rest the verdict and judgment on. The crime charged involves the forgery of a note and mortgage in order to procure a loan on real estate. The transaction forming the basis of the crime was a part of the business in which these defendants were engaged and with which they were familiar. The defendant John Tynon was a Cherokee, born and reared in Delaware county, a farmer, real estate and mortgage agent, who lived on his allotment next to that of Jennie V. Gunter, on which the fraudulent

mortgage was given, and who had known the Gunters all his life.

The defendant O. C. Smith likewise was a Cherokee Indian, born and reared in Delaware county, an acquaintance of the Gunter family, but who had not resided in Delaware county for several years. For several months prior to the commission of the crime charged this defendant had been a traveling agent for a Rio Grande Valley land company which had its principal office in Kansas City, Mo. Smith's territory of operation was Northeast Oklahoma, including Delaware county.

The state proved that on October 28, 1925, these defendants, together with a woman about 30 years of age, who claimed to be Jennie V. Gunter, appeared at the home of J. M. Fuser near Afton, Okla., and notified him that the woman wanted to secure a loan on her land in Delaware county, and Tynon introduced the woman to Fuser as Jennie V. Gunter. Defendant Tynon accompanied Fuser to inspect the land. Fuser agreed to make a loan of $1,100. Both defendants accompanied the woman who claimed to be Jennie V. Gunter to the town of Jay, where they had the mortgage recorded and the abstract brought down to date. Both defendants then brought the woman back to Fuser, who paid the woman $94 in cash and give her a draft for $1,000 for the balance of the loan. Both defendants then accompanied the woman to Tulsa, where she cashed the draft and disappeared. Defendant Tynon admits that the woman give him $30, but defendant Smith denies that he received any part of this bogus loan.

Defendants contend that they met the Gunter woman by accident in a hotel in Miami and heard her say she wanted to get a loan on her land, and they volunteered to help her. From the time they first accidently met her

until the time the draft was cashed in Tulsa, these defendants were her inseparable companions. The defendants contend that this evidence was insufficient to justify the verdict of the jury.

None but a master mind could have conceived this crime, and none but those familiar with the real estate business and with the affairs of the Gunter family could have executed it. All the facts and circumstances in the case point conclusively to the guilt of the defendants. This court never disturbs a verdict of the jury where there is any competent evidence to support the verdict. Surrell et al. v. State, 43 Okla. Cr. 97, 277 Pac. 282; Richerson v. State, 43 Okla. Cr. 393, 278 Pac. 356; Adams v. State, 43 Okla. Cr. 179, 277 Pac. 688.

The defendants next contend that the trial court erred in its refusal and failure to give to the jury the defendants' requested instructions numbered 1, 3, 4, 5, 6, and 7. Under section 2687, subd. 5, C. O. S. 1921, and the decisions cited in support thereof, it is clear that the instructions must be settled before they are read, and any special requests must be reduced to writing and offered to the trial court before the instructions are given. Boutcher v. State, 4 Okla. Cr. 585, 112 Pac. 762; Lumpkin v. State, 5 Okla. Cr. 488, 115 Pac. 478; Russell v. State, 17 Okla. Cr. 164, 194 Pac. 242.

It appears from the case-made that the court read his instructions to the jury, including one of the special instructions requested by the defendants, and that thereupon the following proceedings occurred:

"By the Court: You may now take such exceptions to the instructions of the court as you may desire.

"Mr. Commons: The state has no exceptions.

"Mr. Ballard: The defendants have no exceptions.

"By the Court: Let the record so show."

The failure of defendants' counsel to follow the requirements of the statute by making such written requests seasonably and by failure to except to the instructions as given by the court was a waiver on their part not only of the giving of any special instructions, but was a waiver of any objections to the instructions as given by the court.

A reading of the evidence offered in the case leaves no doubt in the mind of the court of the guilt of both the defendants.

The errors of law being without merit, the cause is affirmed.

EDWARDS, P. J., and DAVENPORT, J., concur.